STATE *ex rel.* DOLLARD, Attorney General, v. BOARD COUNTY
COMMISSIONERS HUGHES COUNTY *et al.*

1.  Under Sections 2 and 3, art. 5, of the constitution of the state, the orig-
    inal jurisdiction of the supreme court includes the power to issue, hear,
    and determine a writ of *certiorari* under such regulations as may be
    .prescribed by law; where judicial questions are involved affecting the
    sovereignty of the state, its franchises or prerogatives, or the liberties
    of its people.
2.  An affidavit of the attorney general of the state, alleging that the board
    of county commissioners of an organized county has unlawfully estab-
    lished voting precincts and appointed judges of election and places for
    holding elections in territory outside of and ·beyond the limits of its
    county, to-wit in unorganized counties attached to such organized county
    "for judicial purposes," and that such acts are in violation of the election
    laws of the state, and an unlawful interference with the elective fran-
    chise of the state, and an injury to the rights and elective franchise of
    all the citizens of the state, presents a case for the exercise of such
    original jurisdiction by this court, where there is no writ of error, ap-
    peal, or other plain, speedy, and adequate remedy.
3.  In such case, the affidavit being made by the attorney general in behalf
    of the state, it is made by a party "beneficially interested."
4.  The power and authority to make such affidavit, and to apply for and
    prosecute such writ for the review of such proceedings, are inherent
    in the office of the attorney general upon principles of general law,
    and do not depend upon any express statute.
5.  A writ of *certiorari* issued under Section 5507, Comp. Laws, authorizing
    such writ, "when inferior courts, officers, boards, or tribunals have ex-
    ceeded their jurisdiction," will reach, or bring before the court for re-
    view, the proceedings of such board of county commissioners, in re-
    spect to the acts so complained of, as in excess of the jurisdiction of
    said board, where there is no writ of error, appeal, nor, in the judg-
    ment of the court, any other plain, speedy, and adequate remedy.
6.  In this case, *held*, there is no writ of error, appeal, nor other plain,
    speedy, and adequate remedy, and that a writ of *certiorari* properly
    issued.
7.  Chapter 175, Laws 1887, attaching the unorganized counties of Nowlin
    and Sterling to Hughes county "for judicial purposes," did not have
    the effect of so attaching them for election purposes, such act being at
    once a grant and a limit of jurisdiction.
8.  To be attached "for judicial purposes," as in said Chapter 175, is not to
    be "annexed" within the meaning of Section 535, Comp. Laws.

(Syllabus by the court.   Argued Oct. 16, 1890.   Opinion filed Oct. 28, 1890.)

Application for a writ of *certiorari*.

The facts and nature of the proceedings are stated in the opinion.

*Robert Dollard, Att'y Gen., (A. W. Burtt, A. B. Melville, H. S. Mouser,* and *L. W. Crofoot, of Counsel)* for plaintiff.

The board of county commissioners of Hughes county in assuming a jurisdiction to open up election precincts outside of that county, acted beyond and outside of its ordinary conceded statutory jurisdiction. In determining to assume such a jurisdiction, its action was judicial and subject to review upon *certiorari.* Robinson v. Board, 16 Cal. 208; People v. Goodwin, 1 Seld. 568; State v. Washington, 2 Chandler, 251; Jordan v. Hayne, 36 Ia. 9; Wood v. Peake, 8 John. 68; Miller v. Board, 25 Cal. 94; Baker v. Board, 40 Ia. 226; Merrick v. Board, 2 N. W. 922. Relator has no plain, speedy, and adequate remedy other than *certiorari.* Harwood v. Buffalo, 14 N. Y. 559; Gillispie v. Broas, 23 Barb. 378; Swift v. Poughkeepsie, 37 N. Y. 511. The legislature is the proper authority and proper branch of the government to provide for elections. It has never provided for elections in unorganized counties, and the board had no jurisdiction to perform the acts complained of. There is no inherent right in the people to hold an election. McCrary on Elections, § 121; Sawyer v. Hayden, 1 Nev. 75; State v. Collins, 2 Nev. 351. The time, place and manner of holding an election must be prescribed before an elector can vote, although otherwise in all respects qualified.

*L. E. Gaffy, State's Attorney for Hughes County, (Crawford* and *De Land, H. R. Horner,* and *N. B. Reed, of Counsel)* for defendants.

The acts complained of are ministerial, and are not subject to review upon *certiorari.* Robinson v. Board, 16 Cal. 208; Water Works Co. v. Hughes County, 5 Dak. 163; Fulkerson v. Stevenson, 1 Pac. 262; Moode v. Board, 45 N. W. 435; State v. Kernan, 21 N. W. 530; People v. Commissioners, 1 N. E. 764. It appears from plaintiff's showing that the acts complained of were idle and void. They therefore cannot be reviewed by this writ. Holden v. Council, 34 N. W. 336; State v. Mayor, 25 N. W. 449; Locke v. Selectmen, 122 Mass. 290; Ewing v. St-

Louis, 5 Wall. 413; State v. Board, 45 N. W. 38.    Plaintiff has other plain, speedy, and adequate remedies.    If, as contended, the acts are judicial, or *quasi* judicial, an appeal would lie. Railroad v. Christian, 1 So. 121; State v. Hauft, 23 N. W. 308, § 610 Comp. Laws; Perkins v. Judge, 10 N. W. 209.    Any qualified voter is an elector of the state, even though he reside in an unorganized county, and has a constitutional right to vote. § 1, Art. 6, Constitution of South Dakota; § 19, Bill of Rights; § 3. Art. 4, Const.    A neglect on the part of the board to act as they did would jeopardize the election.    Cooley Con. Lim. 616; People v. Maynerd, 15 Mich. 471; Lanning v. Carpenter, 20 N. Y. 616; State v. Fitzgerald, 32 N. W. 788.

The affidavits upon which the writ issued are insufficient in that they do not show that any one is beneficially interested, nor is any injury to the state or any one alleged.    Champion v. Board, 41 N. W. 739; Wood v. Bangs, 1 Dak. 172; Grover v. Cole, 3 Dak. 301; News Co. v. Harris, 62 Ia. 502; People v. Pica, 29 Cal. 211; People v. Andrews, 53 N. Y. 445.

KELLAM, J.    On the 11th day of October, 1890, the attorney general of the state presented and filed in this court his own affidavit and that of Bayard E. Beach, stating in substance, that the county of Hughes was an organized county, and the couties of Nowlin and Sterling were unorganized counties of the state; that on the 2d day of September, 1890, the board of county commissioners of said Hughes county assumed to establish election precincts in and for said unorganized counties of Nowlin and Sterling, and to appoint polling places therein, and judges therefor; particularly reciting the proceedings of said board; and further alleging that said proceedings were in violation of law, and in violation of the election laws of the state, and were an unwarranted and illegal assumption of power and jurisdiction by said board of county commissioners, and an unlawful and unauthorized interference with the elective franchise in the state, and an injury to the rights and elective franchise of all of the citizens of the state; and further alleging that there was no writ of error, appeal, or any other plain, speedy and adequate remedy in the premises; and, upon these

affidavits. prayed that a writ of *certiorari* issue out of this court commanding the said board of county commissioners and C. N. Hawley, county auditor of said county, to certify and return to this court all the proceedings of said board in respect to the matters complained of, so that this court might further act thereon, as of right and according to law ought to be done. Upon this application an order was made and served on defendants requiring them to thow cause why such writ should not issue. Upon the return and hearing of such order, the court ordered the writ to issue. Upon the day fixed in said writ the defendants duly made and filed their return thereto, with a copy of the proceedings of said board, showing the facts, substantially as alleged in said affidavits, as to the establishment of voting precincts, and polling places, and the appointment of judges of election in the unorganized counties of Nowlin and Sterling. Upon the return of the writ, defendants moved to quash, and as the grounds of the motion cover the entire controversy, so that a determination of the motion virtually disposes of the case, we will examine such grounds *seriatim*.

1.   That no reason or cause is given in the application why this court should exercise jurisdiction, and why the application was not made to the circuit court. Sections 2 and 3, of Art. 5, of the constitution of the state, read as follows: "Sec 2. The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law. Sec. 3. The supreme court, and the judges thereof, shall have power to issue writs of *habeas corpus.* The supreme court shall also have power to issue writs of *mandamus, quo warranto, certiorari,* injunction, and other original and remedial writs, with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law; provided, however, that no jury trials shall be allowed in said supreme court, but, in proper cases, questions of fact may be sent by said court to a circuit

court for trial before a jury." The supreme court, while thus primarily and generally an appellate court, has undoubted jurisdiction to issue this writ of *certiorari*, and to hear and determine the same, if the affidavit herein presents such a case as may fairly be supposed to have been within the contemplation of the makers of the constitution, when the above sections were formulated, and of the people when they adopted them, as at once granting and limiting the powers and jurisdiction of this court. In Everitt v. Board, (opinion not yet filed), this court denied the writ, because the affidavit upon which it was applied for showed only that the taxes of the affiant were liable to be increased, and that to a very inconsiderable amount, by the action of the board complained of. The wrong alleged was one affecting only a private property right, and that almost to an inappreciable extent, and the only reason suggested for invoking the exercise, by this court, of a confessedly unusual and extraordinary jurisdiction, was the saving of time required in the regular and orderly prosecution of the case through the ordinary channels of litigation. Neither the quality of the case, nor the reason given for ignoring the circuit court, was peculiar to that case, and to have entertained such proceeding would have been violently repugnant not only to our own, but the general understanding of the power and the duty of this court, under the sections of the constitution above quoted. This disposition of that case was, we think, not only justified, but required by the rule established in similar cases, as announced in May v. Keep, 2 Pin. 301; Hurlbut v. Wilcox, 19 Wis. 441; Tucker v. Commissioners, 50 Mich. 5, 14 N. W. Rep. 678. In this case the attorney general of the state makes the affidavit, and asks for the writ. His affidavit alleges, in addition to matters of which this court will take judicial knowledge, to-wit: The ensuing general election in November for the election of state and county officers, members of congress and members of the state legislature, for the selection of a permanent seat of state government, and for voting upon certain proposed amendments to the constitution; that the board of county commissioners of Hughes county had, illegally, and without authority of law, as-

sumed to establish voting precincts and polling places, and to appoint election judges therefor, in territory outside of and beyond their jurisdiction, to-wit: in the unorganized counties of Nowlin and Sterling; particularly describing such precincts, and locating such polling places, and designating by name the judges so attempted by said board to be established and appointed, and alleging that such action upon the part of said board was in violation of the election laws of the state, and an unlawful and unauthorized interference with the elective franchise in this state, and an injury to the rights and elective franchise of all the citizens of said state; and that because the aforesaid matters are of great public importance, and the question involved one of great public interest, affecting the elective franchise of the people of the whole state, and because there is no writ of error or appeal or any other plain, speedy and adequate remedy in the premises, a writ of *certiorari* is prayed for to bring before this court the record of said board in respect to such proceedings, for examination and review. Are these facts, both in respect to their nature and force, sufficient to bring the case within and to command the exercise of the original jurisdiction of this court? The constitution of the state of Wisconsin, § 3. Art. 7, is substantially the same as the provisions of our constitution, defining the powers and jurisdiction of the supreme court. The question of the original jurisdiction of that court, and in what cases it should be exercised, was elaborately considered and discussed in the Railroad Cases reported in 35 Wis. 425, and it was there held that said Section 3, Art. 7, of the Wisconsin constitution, which empowers the supreme court "to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,*" etc., and to hear and determine the same, was designed to give that court original jurisdiction of all judicial questions affecting the sovereignty of the state, its franchises and prerogatives, or the liberties of its people. The same interpretation of these constitutional provisions was again declared in Attorney Gen. v. City of Eau Claire, 37 Wis. 400, and again in Attorney Gen. v. Albion Academy, 52 Wis. 469, 9 N. W. Rep. 391. In other states the courts of last resort have con-

strued equivalent constitutional provisions more liberally, and have not so restricted their original jurisdiction; and, while we are not prepared to now, and do not, accept the doctrine of the Wisconsin court in the above cases, as limiting the original jurisdiction of this court, under our constitution, to such cases, we refer to them as showing that, under a very strict construction of the charter of this court, its original jurisdiction would cover "questions affecting the sovereignty of the state, its franchises and prerogatives, or the liberties of its people." Are the wrongs complained of in this proceeding, and for the correction of which it is instituted, of this nature—such as pertain to the sovereignty of the state, its franchises and prerogatives, the rights and liberties of the people, and such as raise questions *publici juris*, as distinguished from mere private rights? We think this can hardly admit of doubt, that it is a case in which the interest of the state is direct and approximate, affect the state at large in the person of all its citizens. Geographically, the action complained of is local, but in its effect and scope it is not local, but general. This being the ground, then, upon which this court takes jurisdiction, the reasons for coming directly to this court, if further reasons are necessary, are within the judicial knowledge of this court, to-wit, the immediately ensuing election, and the public importance of an early determination of the questions involved.

2. The application does not show that the relator is a party beneficially interested, or that the acts complained of are of general interest to the public of this state, or that the acts complained of tend in any manner to prejudice rights of all or any of the citizens of the state, or to interfere with, abridge, alter, or take away any privilege or franchise whatever. The action is brought by the attorney general of the state. If the matters charged in his relation are true, then it is not only competent and proper for that officer to bring such facts to the attention of a proper court for correction, but it is his duty so to do. It is not clear how any private individual could maintain an action for such relief. Welch v. Board, 23 Iowa, 199. He is the attorney selected and retained by all the people, in their

collective capacity as a state, to represent them in the courts, and to protect their constitutional rights from invasion. Such power and duty, upon principles of general law, inhere in the office itself, *ex ri termini*, and do not depend upon any express statute. Hunt v. Railway Co., 121 Ill. 638, 13 N. E. Rep. 176. Precedents, almost without limit as to number, might be cited, in which such power has been recognized and exercised. People v. Mayor, etc., 10 Abb. Pr. 144; Davis v. Mayor, etc., 2 Duer, 663; State v. Saline Co., 51 Mo. 350; Attorney Gen. v. City of Eau Claire, 37 Wis. 400. It follows, from what we have already said, that in our judgment, the acts complained of are of general interest to the people of the state. The state law has provided the machinery for taking the expression of all its qualified electors, under certain conditions of residence, upon the question, among others, of adopting or rejecting certain proposed amendments to its constitution. For the convenience of voters, this expression is taken by districts, and any substantial departure from a lawful administration of such election laws which illegally increases or reduces the number of votes cast and reported from any one district must, of necessity, unfairly affect the general result in which all of the electors of the state are interested.

3. That the acts complained of are ministerial in character, and are not such as will admit of review under a writ of *certiorari*. Section 5507, Comp. Laws, is as follows: "A writ of *certiorari* may be granted by the supreme and district courts when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction, and their is no writ of error or appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy." There is little room for doubt or discussion as to the office of a writ of *certiorari* at common law, and in many of the states the writ is left as at common law unaffectd by statutory regulations. In other states, the legislature has adopted rules of practice for its issuance and hearing, without materially affecting the reach or scope of the writ, but our statute, inherited from the territory of Dakota, is *sui generis*. It is not only unlike the common law, but equally unlike the law of

any other state, so far as we have had the means of pursuing the inquiry. Gathering its meaning and intent from its language, the office of the writ which it authorizes is not confined to a review of judicial or *quasi* judicial proceedings, but extends to every case where, in the language of such statute, inferior courts, officers, boards, or tribunals have exceeded their jurisdiction; and their is no writ of error, appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, subject only to the further limitation of Section 5513, that "the review upon this writ cannot be extended further than to determine whether the inferior court, tribunal, board, or officer has regularly pursued the authority of such court, tribunal, board or officer." Thus the legislature, whether wisely or unwisely it is not within the province of this court to inquire, has, in plain and unequivocal terms, extended the scope of the writ in this state so that it fairly brings before us the record of these proceedings, whether judicial or otherwise.

4.    That the plaintiff has other plain, speedy, and adequate remedy. Upon the argument it was insisted by defendants that the state might appeal. Under Section 610, Comp. Laws, appeals may be taken from decisions of the board of county commissioners "upon matters properly before them," and then only, as appears by the opinion of the supreme court in Water-Works Co. v. Hughes Co. 5 Dak. 145, 37 N. W. Rep. 733, when such decision is *quasi* judicial. Such being the necessary condition and quality of the act and decision of the board, to render it appealable, we should be unwilling to hold, even if there were no other obstacles in the way of an appeal by the state in this case, that such was a plain, speedy, and adequate remedy. In our judgment, it would very greatly lack the element of plainness. They also suggest a writ of prohibition—the statutory contest—and *quo warranto*, as available and adequate remedies. These remedies might, and undoubtedly would, be serviceable in reaching some of the results that might follow the acts complained of, but it is not perceived how any or all of them could be made available to accomplish the relief to wards which this writ is directed.

5.   A judgment for the plaintiff upon said writ and return would determine in advance the right of franchise of parties not before the court, before any proper case has arisen to be determined in the premises, and its consequence and effect would be to obstruct the right of suffrage, rather than protect it, and to interfere with the administration of public officers, without sufficient cause.   But one question is before this court, and that a legal one.   It is sharp and well defined.   Did the board of county commissioners of Hughes county, on the 2d day of September 1890, have lawful authority to establish voting precincts within the limits of the unorganized counties of Nowlin and Sterling?   It is a question which we have already held the state, through its attorney general, has a right to present to this court.   The right to present the question carries with it the correlative duty upon our part to answer it.   The power of the court is a narrow one, simply to declare the law as the legislature has made it.   The decision of this question will neither create new rights nor destroy any already existing.   The right to vote, and the conditions under which such right may be exercised, are fixed by the constitution and the legislature; not by the courts.   If the proceedings complained of on the part of the board of county commissioners of Hughes county were extraterritorial they were void, and the court must so declare. To find and hold them valid would not carry the right to vote, where it did not otherwise exist, and so to find and hold them void would not take away any such existing right.

6.   That the acts complained of were and are legal and valid and within the jurisdiction of the defendants.   This goes to and covers the merits of the controversy, and brings us directly to the inquiry, had the board of county commissioners of Hughes county, on the 2d day of September, 1890, authority to establish election precincts, appoint judges of election, and the places for holding such election in the unorganized counties of Nowlin and Sterling?   The territorial legislature, by Section 1, c. 175, Laws 1887, enacted as follows:   "That the counties of  *  *  *  Sterling and Nowlin, in the Territory of Dakota  be   and   the   same   are   hereby   attached  to   the

county of Hughes, in the Territory of Dakota, for judicial purposes." In the construction of the statute and its application to the question now under examination, the immediate point of interest is, what did the legislature mean by the expression "for judicial purposes?" It must be remembered that when this law was passed the counties named were entirely within an Indian reservation. The jurisdiction of the territorial government over that country was restricted and limited to certain purposes, consistent with the treaty rights of the Indians, but the courts had decided in several cases, notably in Langford v. Monteith, 102 U. S. 145, that judicial process, not affecting Indian rights, might run into and be served upon such a reservation; and in March, 1885, congress passed a law making Indians charged with certain offenses committed either within or without such reservation, triable in the territorial courts. But where should such offenses be tried? In what counties were they indictable? What particular county should have jurisdiction and be authorized to prosecute any particular offense committed in an unorganized county, within the limits of the reservation? These considerations would present reasons why the legislature, in 1887, should deem it advisable and important to place these counties, still within the limits of the reservation, under the judicial jurisdiction of an independent organized county having magistrates, courts, and a grand jury. That they intended so much by the expression "for judicial purposes," is hardly questionable, but did they mean more? A very cursory examination of the acts of the territorial legislature reveals the fact that they did, from time to time, and in many instances, attach unorganized counties to organized counties for different purposes,—sometimes for judicial, sometimes for revenue, and sometimes for election, purposes,—and in several instances have strongly discouraged the interpretation that judicial purposes might include election purposes, by specifically providing for such attachments for both purposes; and in 1881, by Chapter 121, the legislature, presumably not regarding the attachment for judicial purposes as sufficient to cover the case, provided specially that such un-

organized attached counties should be also so attached for purposes of registration of deeds, mortgages, and other instruments. These repeated acts of the legislature indicate, we think, that they had constantly in mind that unorganized counties might be attached to organized counties for different purposes, as exigency or convenience might suggest, and that attaching for one specified purpose did not include any other purpose. But if this statute is to be construed and its meaning determined by the ordinary rules of construction, then another consideration is important, if not dominant. Among Vattel's rules for the construction of statutes is this: "The reason of the law—that is, the motive which led to making of it—is one of the most certain means of establishing the true sense." Puffendorf expresses the same thought in one of his rules as follows: "That which helps us most in the discovery of the true meaning of the law is the reason of it, or the cause which moved the legislature to enact it." Now, can it be reasonably claimed that in 1887, when the legislature attached Nowlin and Sterling counties to Hughes county for judicial purposes, it also intended to attach such counties for election purposes? As we have before seen, or at least attempted to show, there was a reason for so attaching them for judicial purposes, but what fact or reason could have been then present with the legislature to suggest the importance, or even the propriety of so attaching them for election purposes? The entire Indian reservation, of which these counties formed a part, was a segregated territory, in which no person could acquire any political rights, nor had the legislature power to confer any. The legislature well knew it had no political jurisdiction over that country, and that any attempt to actually make Nowlin and Sterling counties a part of Hughes county for election purposes would be nugatory and void. But it may be urged that the legislature had in contemplation a change in the political *status* of these counties, contingent upon the extinguishment of Indian rights therein, and while this thought may be entitled to consideration, we do not think we would be justified in going so far to find a reason or a theory, upon which we might hold that the legislature had in-

tended to do what they have not done in terms, when the reason for what they have plainly done is so apparent. But it is further claimed that Section 535, Comp. Laws, read in connection with said chapter 175, Laws 1887, recognizes and confirms the right of defendants to so establish polling precincts in Nowlin and Sterling counties. It reads as follows: "Such portions of the territory not organized into counties as are annexed to any organized county shall, for judicial and other purposes, be deemed to be within the limits and a part of the county to which they are annexed." Whether this section covers the case now in hand, depends entirely upon whether Nowlin and Sterling counties were "annexed" to Hughes county within the meaning of that section. That statute declares that, where an unorganized county is annexed to an organized county, certain consequences shall follow generally and without particular enumeration. It fixes the legal *status* of such annexed county. It shall be deemed to be a part of the senior county, not only for judicial, but for all other, purposes. Such annexation, by the very terms of the law, includes not only judicial purposes, but all other purposes. The former is more comprehensive, because it includes the latter and much besides. That attachment for judicial purposes is not the annexation contemplated by that section, is evident both from the section itself and the very obvious consequences immediately involved if such interpretation were adopted. Impressed with that interpretation, the section would put the legislature in the undesirable position of having deliberately and formally declared that an unorganized county attached to an organized county for judicial purposes, is so attached for judicial purposes, which would be idle and supererogatory. We have no hesitation in holding that the annexation contemplated in said Section 535 is a general annexation, and that the attachment of one county to another for a definite and specified purpose is not such an annexation. The jurisdiction of the senior county over unorganized territory so attached is derived from, and it must be measured by, the act making the attachment. If the annexation is general, the jurisdiction is general

as declared in said Section 535, but, if attached for a specific purpose, the jurisdiction is and must be limited to that purpose. Any other interpretation would not only violate the most elementary rules of construction, but would hinder and embarrass, if not entirely forestall, the legislature in the exercise of its unchallenged power to attach unorganized counties to organized counties for specific and limited purposes only.

We have thus endeavored to cover and express an opinion upon every question presented in the argument. It is a matter of regret to the court, and particularly to the writer, to whom was assigned the duty of preparing this opinion, that the obvious importance of an immediate decision and opinion has precluded a more elaborate treatment of the many questions involved, and such a discussion of them in this opinion as the marked ability and earnestness with which the case was presented on both sides, would seem to demand. Having but the few hours which we might fairly take from the constant demands of the business of the court during term, we have been unable to make as liberal use of authorities as might be expected in an opinion upon the questions discussed. Following the intimations already expressed, it is the opinion of this court, and it is found and adjudged, that the specific acts complained of in the relation of the attorney general, to-wit, the acts and proceedings of the board of county commissioners of Hughes county in establishing election precincts, appointing places for holding the election, and judges of election, within and for the unorganized counties of Nowlin and Sterling, as the same appear by the return of said board, were and are irregular, erroneous, void, and of no effect, for the reason that said board of county commissioners of Hughes county were without jurisdiction to do and perform said acts within and for said unorganized counties of Nowlin and Sterling. Let formal judgment be entered accordingly. All the judges concur.