Judges of the Supreme Court, State of South Dakota.

STATE *ex rel.* McGEE v. GARDNER.

1. That clause of section 3, art. 5, of the constitution, which authorizes the supreme court to issue the "writ of *quo warranto*" must be understood as intended to give the court jurisdiction of cases in which the information in the nature of *quo warranto* has become a substitute for the ancient writ.

2. In case of doubt between different constructions claimed for a constitutional or statutory provision or the meaning of a term, it is always allowable to inquire what results would legitimately follow either, with a view of ascertaining, if possible, whether such consequences were contemplated or intended.

3. There is no inherent reserved power in the people to hold an election to fill a vacancy in an elective office.

4. Such election can only be held when and as authorized by law.

5. In section 37, art. 5, of the constitution, which provides that "vacancies in the elective offices provided for in this article (judiciary) shall be filled by appointment until the next general election," etc., the expression "next general election" means the next election at which it is provided by law that the officer may be elected whose office has become vacant.

6. In November, 1892, when the general election was held, there was no law, constitutional or statutory, authorizing the election of a circuit judge, either for a full term or for a fractional term.

7. Until such a law is passed there can be no election of supreme or circuit judges under section 26, art. 5, of the constitution, providing that "the judges of the supreme, circuit, and county courts shall be chosen at the first election held under the provisions of this constitution, and thereafter as provided by law."

8. The governor having appointed respondent to the office of circuit judge of the seventh judicial circuit to fill a vacancy in said office, such appointment constitutes a good title to such office until the legislature provides by law for the election of his successor.

(Syllabus by the Court.    Opinion filed Feb. 24, 1893.)

*Quo warranto* by the state on the relation of Levi McGee against William Gardner to try the title to the office of judge of the seventh judicial circuit.    Writ denied.    No briefs filed.

The facts are stated in the opinion.

*Coe I. Crawford, Attorney General,* and *W. O. Temple,* for relator. *William Gardner* and *S. J. Parsons,* for respondent.

KELLAM, J.    This is an application by the relator for leave to file in this court an information in the nature of *quo warranto.* The object of the proceeding is to try the title to the office of judge of the seventh judicial circuit.    As the determination of this application depends upon the construction and effect of certain constitutional provisions, rather than upon a shown compliance with any rules of procedure, we epitomize the facts, which are set out in the information with particularity and clearness, and present the following general statement as sufficient for an understanding of the questions involved:

At a general election held on the 1st day of October, 1889, John W. Nowlin was duly elected judge of the seventh judicial circuit in said state for the term commencing November 2, 1889, and ending the first Tuesday after the first Monday in January, 1894; that he duly qualified, and discharged the duties of his office until the 1st day of November, 1891, when he resigned, and the said office became vacant; that thereupon the governor, by virtue of section 37, art. 5, of the constitution, and sections 1392 and 1394 of the Compiled Laws, appointed and commissioned the respondent, William Gardner, to fill such vacancy; that thereupon the said William Gardner qualified, and took, and still retains, possession of said office; that at the next general election, which occurred on the 8th day of November, 1892, the relator was a candidate for the office of said circuit judge for the unexpired term of said John W. Nowlin, and received a majority of all the votes cast; that all the requirements of the law in respect to his

nomination, the manner, and form of holding said general election, and the canvass of the votes were duly observed; that in due time relator took and subscribed the oath of office and transmitted the same to the secretary of state, and then demanded of the said William Gardner to be let into said office, which was refused.; that at the general election held in November, 1890, the said William Gardner was duly elected a member of the legislature of said state for the term of two years, ending January 1, 1893, and duly qualified and assumed the duties of said office; that at the time of his said appointment to the office of judge as aforesaid, to wit, on the 2d day of November, 1891, his term of office as such member of the legislature had not expired, and he was ineligible to said office of circuit judge by reason of section 12, art. 3, of the constitution of the state; that the salary attached to said office is $2,000. Respondent presents his own affidavit, showing that on the 11th day of January, 1893, and after the expiration of the term for which he was elected a member of the legislature, as set forth in relator's information, he was duly appointed by the governor of the state to said office of circuit judge, to fill the unexpired term of Judge Nowlin, resigned; that he now holds the same by virtue of said appointment; and resists the filing of relator's information.

While respondent's objection to the filing of this information is in form and matter of time preliminary, the objection goes to the substance and merits of this whole controversy. Respondent does not question the regularity of relator's nomination, nor his qualifications as to age, residence, or learning, nor the form and manner of the general election, nor the fact that relator received a majority of the votes cast, but contends that the votes so cast for the relator were nugatory, and without legal effect, for the reason that there was no law, either constitutional or statuory, authorizing an election to fill the vacancy in said office of circuit judge, and that his appointment by the governor is good and in full force, and continues him in said office until his successor is elected and qualified, which can only be done at an election legally authorized to fill such vacancy. It is evident that the correctness of this claim is purely a question of law,

and must be determined upon a consideration of constitutional and statutory provisions, of all of which we are now as fully informed as we could be upon a final and formal presentation of any issue that might be framed in the case. There was some discussion as to the precise form in which this court should exercise its jurisdiction in *quo warranto*, whether by issuance of writ or by entertaining an information in the nature of *quo warranto*. We deem it unnecessary, and it would probably seem pedantic in this court to undertake to review the growth and development through different forms, of proceedings in *quo warranto*, from the original prerogative writ down to the special proceedings, initiated by information, which have become the remedy now in general use as a substitute for the ancient writ. The jurisdiction of this court in *quo warranto* proceedings is derived from section 3, art. 5, of the constitution: "The supreme court shall also have power to issue writs of *mandamus, quo warranto, certiorari,* injunction, and other original and remedial writs, with authority to hear and determine in such cases and under such regulations as may be prescribed by law." This constitutional provision, while using the terms "writ of *quo warranto*," has in different states been construed to mean the modern information in the nature of such writ. State v. Railroad Co., 34 Wis. 197; State v. Gleason, 12 Fla. 190; People v. Utica Ins. Co., 15 Johns. 358; State v. Leatherman, 38 Ark. 81; People v. Keeling, 4 Colo. 129.

The real problem to be solved is to ascertain the true intent and meaning of section 37, art. 5, of the constitution. It reads as follows: "All officers provided for in this article shall respectively reside in the district, county, precinct, city, or town for which they may be elected or appointed. Vacancies in the elective offices provided for in this article shall be filled by appointment until the next general election as follows: All judges of the supreme, circuit, and county courts, by the governor; all other judicial and other officers by the county board of the counties where the vacancy occurs; in cases of police magistrates, by the municipality." The argument of the relator is like this: The term "general election" is several times used in the constitution, and has a fixed meaning; section 20, art. 26, (Schedule,) providing

"that the first general election under the provisions of this constitution shall be held on the first Tuesday after the first Monday in November, 1890, and every two years thereafter." So that said section 37 authorized the governor to fill the vacancy in the said office of circuit judge by an appointment which could not reach beyond "the next general election," to wit, the November election of 1892. And, further, that said section did by implication authorize the election at that time of a person to fill such vacancy, and the unexpired term of Judge Nowlin, resigned. Whether the expression "general election" is used in this section with the definite and defined meaning given to it in said section 20, art. 26, seems, at least, doubtful when other persons of the same section are considered. The object to be sought is the thought of the constitution makers in the use of this expression, not generally, nor in other parts of the same instrument, but in this particular provision; and, while the presumption is that they constantly used the same expression with the same meaning, yet such presumption is not conclusive. In case of doubt between different constructions claimed for a constitutional or statutory provision, or the meaning of a term, it is always allowable to inquire what results would legitimately follow either, with a view of ascertaining, if possible, whether such consequences were contemplated or intended. Rhodes v. Weldy, (Ohio,) 20 N. E. Rep. 461; Henry v. Trustees, 48 Ohio St. 671, 30 N. E. Rep. 1122; Cooley, Const. Lim. 71. This provision for filling vacancies applies to all the offices named in said article 5, including justices of the peace and police magistrates, but we do not think it would be contended that by force of this provision vacancies in the office of justices of the peace must be filled at the general November election in the even-numbered years, instead of at the annual town meeting, or that vacancies in the office of police magistrate must be filled at the next general election referred to in said section 20 of the schedule, instead of at the next municipal election. We think the term "general election" is used here with the qualification implied that is expressed in section 1395, Comp. Laws. That section refers to appointments to fill vacancies, and, although it is provided in a former section that justices of the peace shall be

elected at the annual town meeting, still said section 1395 provides that vacancies in such office are to be filled by appointment "until the next general election at which the vacancy can be filled." So, in case of a vacancy in the office of police magistrate, the appointment would be made by the municipality, not until the next general election, as defined in said section 20, being the biennial fall election, but until the next municipal election at which such office might properly and legally be filled. This interpretation of the expression "next general election," as used in said section 37, is not unreasonable, and seems necessary to avoid an inconsistency, if not a positive conflict, between such section and other provisions of the constitution.

Section 26 of said art. 5 provides for the election of judges at the first election held under the constitution, and "thereafter as provided by law," which may, it is expressly provided, be on a day different from that on which an election is held for any other purpose. The judicial election may therefore be at the general election in the even-numbered years, or at the annual election (section 1441, Comp. Laws) in the odd-numbered years, or it may be at a special election called for that and no other purpose. If this present legislature should provide for the election of judges at an annual election to be held in the fall of 1893, as it has undoubted authority to do, then the term for which Judge Nowlin was elected would be thus determined. But suppose, the legislature having exercised its right, and made the judges electable, not at the general election, but at the annual election in 1893, a vacancy occurs, would the governor still appoint until the next general election? If so, his appointment might be good to continue the appointee in office beyond the term for which his predecessor was elected, and it would prove to be more than an appointment to fill a vacancy. This would not be tolerable, but it is plain that such a condition might easily occur, and we think the fact strikingly illustrates the propriety, if not necessity, of interpreting the term "next general election" as we have already indicated. It will not do to say that it ought not to be so qualified, until such construction becomes necessary by the legislature having acted and made the judges electable at a time other than

'the general election, for every provision of the constitution must be read and construed with reference to every other provision, and with regard not only to what must be done, but what may be done under it. Besides, to so hold would make the meaning of the constitution depend upon what may be the subsequent action of the legislature.

We find strong support for such interpretation of the term "next general election" in the very recent case of State v. Philips, (Fla.) 11 South. Rep. 922, where the court was called upon to determine the right of a respondent in *quo warranto*, proceedings to the office of municipal judge. It was provided in the charter under which the case arose that the city council should, at its second regular meeting after the election in June, 1889, elect a city clerk and other designated city officers, and a municipal judge. The term of office of the judge was two years, and of other officers one year. It was further provided that thereafter, at the second regular meeting after the annual election, there should annually be elected the officers whose term of office was one year and biennially the officers whose term was two years; thus including the municipal judge. At its second regular meeting after the election in June, 1891, the city council made an election, but such incumbent resigned January 1, 1892. The city council was authorized to fill such vacancy "until the next regular election." They filled the vacancy by the election of the relator. At the next regular election thereafter, being the second meeting of the council after the election in June, 1892, when other city officers were elected, they also elected a municipal judge to fill the unexpired term of the resigned judge, upon the theory that relator's appointment expired at such election, because it was in terms and in fact the "next regular election;" but the court held that the expression "next regular election" must be understood and taken to mean the next regular election at which it was provided that a judge might be elected, and consequently that relator's term did not expire until the regular election in 1893. The court said: "When it is declared that the city council shall fill vacancies until the next regular election, it means until the next

regular election provided by the charter for electing the officer whose term has become vacant."

Feeling constrained to hold that the term "next general election," as used in said section 37, art. 5, means the next general election at which a circuit judge might be elected, the next question, directly stated, is this: Is there any law, constitutional or statutory, which authorized the electors of the seventh judicial circuit, at the general election in November, 1892, to vote for and elect a judge of said circuit to fill the vacancy occasioned by the resignation of Judge Nowlin? The relator concedes that, although the office of circuit judge is elective, there is no inherent reserved power in the people to hold an election of such judge, either for a full term or to fill a vacancy, and that it can only be done when and as affirmatively authorized by law. This principle is firmly settled. 6 Amer. & Eng. Enc. Law, p. 294; People v. Mathewson, 47 Cal. 442; State v. Robinson, 1 Kan. 17; State v. Jenkins, 43 Mo. 261; Sawyer v. Haydon, 1 Nev. 75; Com. v. Baxter, 35 Pa. St. 263. Relator, however, insists that the authority to hold an election may be implied, and that what is implied is as much a part of the law as what is expressed, and contends that authority for filling said vacancy by election is conferred by necessary implication by the said section 37, art. 5, which we have already quoted and partially considered. He argues that, the power of the governor to appoint being limited to "the next general election," there springs the plain implication that at that time the people are authorized to elect. If, then, this implication is a fair and reasonable one, and is therefore as much a part of the constitution as though it were expressed, what becomes of the authority expressly conferred upon the legislature by section 26 of the same article, to provide when the judges should be elected? It may be replied that this implied authority refers only to elections to fill vacancies, and in respect to these two sections, and the necessity, if possible, of avoiding any conflict between them, relator, in his brief, says: "A reasonable construction would be to hold that section 26 refers exclusively to the full term, or regular election of the judges,—the day on which all the judges are elected throughout the state,—while section 37 has reference to

the filling of vacancies; and it is plain that this was the intent of the convention adopting the constitution." But with this thought in mind, let us refer again to the case already supposed. The legislature having made the judges electable at the annual election or the election in the odd-numbered years, as they may, a vacancy occurs six months prior to such election, does the governor's appointment then run past the ensuing annual election and until the "next general election?" If so, it would necessarily extend that term a year beyond the term in the other circuits of the state, and, in consequence, cut off one year from the term of the elected successor, for by section 26, art. 5, such successor's term must expire simultaneously with the term of all other circuit judges. A construction from which such consequences would legitimately follow cannot be tolerated. But if, on the other hand, in the case supposed, the governor's appointment would expire at the next annual election, instead of at the next general election, it would be so, for one of two reasons; either because the term "next general election," as used in said section, was not intended to have the fixed meaning claimed for it by relator, or because, although originally so intended by the framers of the constitution, subsequent legislation, permissible and even foreshadowed by the constitution itself, makes necessary a different construction from that originally intended, which latter view is equally intolerable. We can see no reasonable escape from holding that the expression "the next general election," as used in said section 37, art. 5, means and was intended to mean the next election at which it is provided by law that a circuit judge may be elected.

Section 26 of the same article says: "The judges of the supreme, circuit, and county courts shall be chosen at the first election held under the provisions of this constitution, and thereafter as provided by law; and the legislature may provide for the election of such officers on a different day from that on which an election is held for any other purpose," etc. It is judicially known to this court that prior to this constitution the judges of which the supreme and circuit judges are the successors were not elective officers, and that there was no law providing for their election. Such fact was of course well known to the convention that

36—S. D.

formulated the constitution, and to our minds the plain thought and suggestion of the foregoing section is that it would become the duty of the legislature to provide for such election; and until such provision is made there is no law in this state for the election of judges. This view is sustained by the fact that of all the state officers the judges alone are left by the constitution to be elected "as provided by law;" as to all others the constitution definitely provides when they shall be successively elected. Sections 3, 12, art. 4. It is very evident that the legislature did not understand that the constitution itself, unaided by statutory law, made provision for the election of judges, for at its first lawmaking session it definitely provided for the election of county judges, and fixed the time for their election. Chapter 78, Laws 1890. Such a law was no more necessary to authorize the election of county judges than supreme and circuit judges, for said sections 26 and 37 cover the three classes of judges in the same terms. Thus interpreting and construing the constitutional provisions involved, we conclude that the governor's appointment of the respondent, made January 11, 1893, constitutes a good title to the office to which he was appointed until the legislature provides by law for the election of his successor, unless his term under such appointment is controlled by one or more of the statutory provisions to which relator calls our attention. We refer to the appointment of January, 1893, for the reason that it was under this appointment that respondent was holding and claiming the office in question when relator instituted this proceeding, so that the question of respondent's eligibility under the first appointment, and during the term for which he was elected a member of the state legislature, is not involved. We do not think sections 1392, 1395, Comp. Laws, cited by relator, militate against, but rather reinforce, the justness of the conclusion we have reached. The two sections read as follows: "All vacancies, except in the offices of members of the legislative assembly, shall be filled by appointment as follows: (1) In the state and district offices, by the governor. * * * Appointments under the provisions of this act shall be made in writing, and made to continue until the next general election at which the vacancy can be filled, and

until a successor is elected and qualified." Here the appointment is good, not until the next general election, but until the next general election at which the vacancy can legally be filled,—that is, the next general election when it is provided by law that the vacancy can be filled; and, as we have attempted to show, there is no law authorizing the filling by election of the vacancy we are considering. But it is evident that neither the foregoing nor any other provision of statutory law can have the effect to enlarge or abridge the force of the governor's appointment so far as it is fixed by the constitution. His authority is, as we construe it, to make an appointment operative and forceful until the legislature provides by law for filling such vacancy by election. Until it is so provided there is no authority for holding such election, and any attempt to do so, no matter what may be the good faith or correct intention of the electors, is nugatory, and without legal effect. Leave to file the information is denied. All the judges concur.