STATE *ex rel.* HOLMES, State's Attorney, v. FINNERUD.

1. There being no provision, for filling vacancies, in article 14 of the constitution, creating a board of regents of education, nor in the act of the legislature enacted to carry into effect that article, a vacancy in such board can only be filled by the governor, pursuant to the provisions of section 8, art. 4, of the constitution.

2. By that section, which reads as follows: "When any office shall, from any cause, become vacant and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment," the power of the governor under such conditions to fill a vacancy, is for the unexpired term of the member whose place the appointment is made to fill.

3. When a vacancy is filled by appointment by the governor under the provisions of that section, no confirmation of the appointment by the senate is required,

4. The sections of the constitution should be construed together, and such a construction given to them as will give effect to each section, and as far as possible harmonize their provisions,

5. So construed, the clause of section 3, art. 14, which provides that the state edudational institutions "shall be under the control of nine members appointed by the governor and confirmed by the senate," should be construed to read, "except in cases of vacancies filled by appointment by the governor."

(Syllabus by the Court.  Opinion filed July 24, 1895.)

Original action in quo warranto to try defendant's title to the office of regent of education.  Dismissed.

The facts are stated in the opinion.

*C. E. DeLand* and *John A. Holmes* for plaintiff.

*W. S. Glass* for defendant.

CORSON, P. J.  This is an action instituted in this court by the state's attorney of Hughes county on his own information, under the provisions of section 5348, Comp. Laws, to determine the title of the defendant to the office of regent of education.  The case is submitted on the pleadings, in which the facts are fully stated, and the original jurisdiction of this court under the power conferred upon it to issue writs of *quo warranto* by the constitution is invoked.  No question is raised as to the exercise of the original jurisdiction of this court in this case, and its power to exercise such original jurisdiction in this class of cases is fully discussed in state *ex rel.* Dollard v. Board of Commissioners of Hughes Co., 1 S. D. 292; 46 N. W. 1127; Everett v. Board of Commissioners of Hughes Co., 1 S. D. 365, 47 N. W. 296; and in State v. Gardner, 3 S. D. 553, 54 N. W. 606.  The facts, which are set out at length in the pleadings, may be briefly stated as follows: Prior to March 31, 1894, Mr. Alexander McIntyre was duly appointed and confirmed as a member of the board of regents of education, for the term ending March, 1893.  On said March 31, 1894, said McIntyre resigned, and thereupon the governor appointed the defendant Finnerud to fill said vacancy for said McIntyre's unexpired term.  Finnerud qualified, and entered upon the discharge of the duties of his office, and now claims the right to said office for McIntyre's unexpired term.  Finnerud's name was never sent to the senate, nor his appointment confirmed by

that body. On the 27th day of February, 1895, and while said Finnerud was still acting as a member of said board of regents, the governor nominated, and the senate confirmed, G. J. Coller as a member of said board, to fill out the unexpired term of said Mc-Intyre, resigned, and the governor issued to him a commission, and he qualified, and at the April term of said board he was, against the objection of Finnerud, who was present and for a time acted as a member of said board, permitted by the board to sit and discharge the duties of a member of the same. This is only important as showing that Finnerud has never voluntarily ceased to be a member of the board. Said Coller now claims the right to said office, and the right to discharge the duties of the same, by virtue of his said appointment by the governor and confirmation by the senate.

Two questions are therefore presented for our decision: First. For what term was Finnerud legally appointed by the governor, in March, 1894? Second. Did the governor have the power to appoint, and the senate to confirm, Coller, in February, 1895, while said Finnerud continued to act as a member of said board?

The office of regent of education is a constitutional office, and is created by article 14 of the state constitution. The article is entitled "State Institutions," and the first two sections relate to charitable and penal institutions. The third section is as follows: "The state university, the agricultural college, the normal schools and all other educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of nine members, appointed by the governor and confirmed by the senate, to be designated the regents of education. They shall hold their office for six years, three retiring every second year. The regents in connection with the faculty of each institution shall fix the course of study in the same. The compensation of the regents shall be fixed by the legislature." Section 4 prescribes the duties of such board of regents, and section 5 being the last section of the article, prescribes that certain specified sciences shall be taught in at least one of the state institutions. No provision

is made in the article for filling vacancies in the board of regents. The legislature, at its first session in 1890, enacted a law carrying into effect these provisions of the constitution, being chapter 6, Laws 1890. The first three sections of the act are the only ones necessary to notice, and these read as follows: "Section 1. As soon as practicable after the passage of this act, and before the first day of March, 1890, the governor, by and with the consent of the senate, shall appoint nine persons, residents of different portions of the state, at least six of whom shall not reside in counties in which any of the state educational institutions are located, who shall constitute a board of regents, to be designated regents of education. Sec. 2. Said board when duly organized shall have control of the various public institutions of learning maintained in whole or in part by the state as state institutions. Sec. 3. Three of the persons so appointed shall hold their offices for two years, three for four years, and three for six years, as indicated by the governor on making the nominations; and all appointments thereafter, except to fill vacancies, shall be made for six years." No provision is made in the act for filling vacancies, and the only other reference to vacancies is in section 15, which provides that a failure of any member to attend two successive public meetings of the board in any calendar year may be treated as a resignation of the member by the governor. There being neither in the article of the constitution creating the board, nor in the law enacted to carry that article into effect, any provision for filling vacancies in the office of regent, section 8 of article 4 of the constitution, entitled "executive department," applies to vacancies in such board. That section reads as follows: "When any office shall, from any cause, become vacant and no mode is provided by the constitution or law for filling such vacancy, the governor shall have the power to fill such vacancy by appointment." The only other section in the constitutian relating to the subject of filling vacancies is section 7, art. 5 which applies to judicial officers. This section was fully considered in State v. Gardner, supra, and in Re Supreme Court Vacancy (S. D.) 57 N. W. 495; Driscol v. Jones, 1 S. D. 8, 44 N,

W. 726. As it has no application to the class of offices we are now considering, it need not be further referred to. The learned counsel for the state contend that as Coller was appointed and confirmed by the senate in February, 1895, he became legally entitled to the office at that time, to serve and fill out McIntyre's unexpired term. They further contend that Finnerud could only legally hold and exercise the duties of the office until said Coller was "appointed and his appointment confirmed by the senate, and until said Coller qualified and entered upon the duties of said office, and no longer;" that when Coller was appointed and confirmed, Finnerud's right to the office terminated.

The learned counsel for the defendant contends that by the terms of section 8, art. 4, the appointment of said Finnerud by the governor, to fill the vacancy caused by the resignation of said McIntyre, was for the full unexpired period of said McIntyre's term. namely, until March, 1898; and that when the governor made the appointment of Finnerud to fill the vacancy his power of appointment was exhausted for McIntyre's unexpired term, unless Finnerud should resign, or the office otherwise become actually vacant. The argument on the part of the state is that, notwithstanding section 8 contains no limitation as to the time for which the vacancy shall be filled by appointment by the governor, the section must be so construed as to limit the time until the next session of the legislature, for the reason that section 3, art. 14, provides that the educational institutions "shall be under the control of a board of regents of nine members, appointed by the governor and confirmed by the senate." They further contend that, to give effect to this provision of the constitution, the term of the appointment made by the governor to fill the vacancy must necessarily be limited to such time as an appointment can be made by the governor and confirmed by the senate, and that when such appointment is made and confirmed by the senate the vacancy is then legally filled, and the governor's appointee's right to the office ceases. This conclusion they insist is consistent with the intent of the framers of the constitution and is supported by the authorities. In support of this posi-

tion they cite a number of authorities. But an examination of the authorities cited discloses the fact that the decisions in nearly every case were based upon constitutional or statutory provisions entirely different from those contained in section 8, art. 4, of our state constitution. The cases of People v. Fitch, 1 Cal. 519, People v. Mizner, 7 Cal. 519, and Wetherbee v. Cazneau, 20 Cal. 504, are cited (decided by the supreme court of California). But, upon an examination of the section upon the subject of filling vacancies in the constitution of that state, we find the following concluding clause in the same: "The governor shall have power to fill such vacancy by granting a commission, which shall expire at the end of the next session of the legislature or at the next election of the people."

It will thus be seen that these decisions do not aid us in the solution of the question presented in this case. They also refer us to State v. Kuhl, 17 Atl. 102, a case recently decided in New Jersey. But turning to the provisions of the constitution of New Jersey relating to filling vacancies, given in the head note of that case, we find it concludes as follows: "The governor shall fill such vacancy and the commission shall expire at the end of the next session of the legislature, unless a successor shall be sooner appointed." The decision in the case cited was one construing an appointment made under this provision of the constitution of that state. They also cite People v. Osborn, 4 Pac. 1074, a case decided by the supreme court of Colorado. That state has a constitutional provision for filling vacancies in office similar to those of California and New Jersey. But the legislature of that state by law created a board of control for the industrial school, and provided as to vacancies as follows: "The governor shall fill the same by appointment and the appointee shall hold only for the unexpired term of the person whose place he is appointed to fill."

The only question decided in that case was that such appointee to fill a vacancy ony held for the unexpired term, and did not hold over, under the general provision that officers hold until their successors are appointed, or elected and qualified. The cases

of State v. Rareshide, 32 La. Ann. 934, and Kroh v. Smoot, 62 Md.
172, are not accessible to us, but we conclude, from the section
quoted from Mechem on Public Officers they are cited to support,
that they have no application to the question now before us.    That
section is as follows:    "It is usually provided by the constitution
or statutes that an officer thus appointed by the executive alone
shall hold the office until the close of the next regular session of
the legislature, unless a successor shall have been sooner appointed.
His title, therefore, expires with the next session, even though no
successor has been appointed.    Appointments thus made are often
required to be submitted to the senate for its approval.    In this
case, if the senate rejects the nomination, the officer's title, it is
said, at once ceases; but, even though approved, the officer, unless
renominated and confirmed during the session, holds only until the
end of the session, or the earlier appointment of his successor, the
approval of the appointment during vacation not being equivalent
to an appointment for the remainder of the unexpired term."    Me-
chem, Pub. Off. section 139.    It will thus be seen that the learned
author is speaking of a class of cases arising under entirely differ-
ent constitutional or statutory provisions from the one we are con-
sidering.    The law governing the appointments made by the presi-
dent of the United States is similar to the constitutional provisions
in the states above referred to.    The limitation upon the power of
the governor to fill vacancies for a longer period than to the end of
the next session of the legislature, found in the constitutions of
the older states, seems to have been intentionally omitted, in the
provision relating to filling vacancies in our constitution; and we
think we may reasonably presume that such limitation was omitted
in view of the fact that that limitation has given rise to much liti-
gation caused by the failure of governors to appoint at the proper
time, or the senate to confirm such appointment, and in order to
prevent such litigation.    The framers of our constitution evidently
deemed it wiser to leave the matter of providing for filling vacan-
cies, except in case of judicial officers to the sound discretion of
the legislature.    This state is not the only one that has adopted

the constitutional provision giving to the governor power to fill vacancies not otherwise provided for, without limiting the duration of the term of such appointee. The state of North Dakota has adopted the same provision, and, as expressing the view of the legislature of that state as to the construction to be placed upon this provision, we notice that the law providing for organizing the state boards of trustees and the appointment of the same contains the following provision: "except to fill vacancies, which appointments shall be made by the governor and shall extend to the end of the next session of the legislative assembly." State v. Boucher (N. D.) 56 N. W. 142.

Undoubtedly, as contended by counsel for the state, the several provisions of the constitution should be construed together. So construed, we are of the opinion that Section 2, Article 14, should be read as requiring all regents appointed for a full term to be confirmed by the senate, but not those appointed by the governor to fill vacancies; and that the clause requiring the state educational institutions to be under the control of nine regents, appointed by the governor, and confirmed by the senate, should be read "with the exception of vacancies filled by the appointment of the governor." In other words, Section 3, Article 14, should be read with Section 8, Article 4, added thereto as an exception. It would not be reasonable to give Section 3 a literal construction, as the board cannot at all times be composed of regents affirmed by the senate. There will be more or less vacancies filled by the governor during the recess of the legislature. To construe Section 8, Article 4, and Section 3, Article 14, as contended for by counsel for the state, requires this court to interpolate into the sections provisions not contained in either. We would be required to add to Section 8 the clause found in the constitutions of the states we have referred to; and we would be required to add new provisions to Section 3, very materially changing the section. The changes required in those sections to make them conform to the views of counsel may be very proper ones for the legislature to make, but this court has no authority to make them,

It is true that this court has held that "where the intention can be collected from the statute words may be modified, altered, or supplied, so as to obviate any repugnancy or inconsistency with such intent." Lawrence Co. v. Meade Co., 62 N. W. 957; Jones v. Trust Co., 63 N. W. 553. But this power would hardly authorize this court to supply important clauses not found in the act, when there is nothing in the provisions of the act indicating that the intention of the lawmaking power was other than that the language used indicated. We find nothing in the provisions of the constitution to indicate an intention on the part of the framers of the constitution to limit the appointment of the governor to fill vacancies until the next session of the legislature, or that the appointees to fill vacancies shall be confirmed by the senate. But, on the contrary, it seems to us the framers of the constitution have clearly expressed their intention that, until otherwise provided by the legislature, the appointment by the governer should be for the unexpired term, and not to be confirmed by the senate. The thought of the framers of the constitution seems to have been to provide that appointments for full terms should be confirmed by the senate, and that appointees to fill vacancies, until some provision should be made upon that subject by the legislature, should hold their offices during the unexpired term, without confirmation. It will be observed that by Section 8 the governor is authorized to fill vacancies by appointment at any time, whether the legislature is in session or not, and that such appointment is not required to be submitted to the senate for confirmation at any time. The provisions of Section 8 were evidently adopted to prevent a vacancy in office when, by inadvertence of the legislature or otherwise, no provision had been made for filling the same. Where the power is given to appoint, and the power has been once exercised, the general rule seems to be that the power is exhausted, unless the appointee is lawfully removed, or the office has otherwise again become vacant. Any subsequent appointment, except when otherwise provided by the constitution or law, to fill such vacancy, while so filled, is void. Mechem, Pub. Off. Sec. 113; Mar-

bury v. Madison, 1 Cranch 137; Thomas v. Burrus, 23 Miss. 550: Wetherbee v. Cazneau, 20 Cal. 503; People v. Reid, 11 Colo. 138, 17 Pac. 302; State v. Chapman, 44 Conn. 595; Johnson v. Wilson, 2 N. H. 202; People v. Woodruff, 32 N. Y. 355; State v. Phillips, 79 Me. 506, 11 Atl. 274; State v. Van Buskirk, 40 N. J. Law 463; State v. Este, 7 Ohio 134; State v. Barbour, 53 Conn. 76, 22 Atl. 686. When McIntyre resigned, the office became vacant; that is, there was no person lawfully authorized to assume and exercise the duties of the same. Driscoll v. Jones, *supra*; State v. Gardner, *supra*; *In Re* Supreme Court Vacancy, *supra*; Mechem, Pub. Off., Sec. 126.

The theory of the plaintiff's counsel is that when Coller was appointed there was a vacancy in the office. But how or why? The governor was authorized to fill the vacancy, and he had filled it by the appointment of Finnerud, who was exercising the duties and functions of the office in place of McIntyre, resigned, when the appointment of Coller was made. There was therefore no vacancy in fact. What provision of the constitution or law made a constructive vacancy? None has been called to our attention, and in our researches we have not discovered any such provision. When Coller was appointed there was therefore no vacancy to fill. By the appointment of Finnerud the office was filled and there is no provision, either in the constitution or law requiring such appointment to be confirmed, or limiting the term of the appointee to a part of the unexpired term of McIntyre, or until the next session of the legislature. Neither is there in the constitution or law any provision providing for the confirmation of regents appointed to fill vacancies in any case. In such cases Mr. Mechem says: "Where the authority to make the appointment is absolute, the appointing power is subject to no other condition or qualification than that it shall be exercised at the time, in the manner, and to the extent prescribed by law, and that the appointee shall be eligible. Where, however, it can be exercised only by and with the consent and approval of the senate or other similar body, its exercise has no effect unless such consent

or approval be given." Mechem, Pub. Off. sec. 124. We conclude, therefore, that, under the constitution and law of this state as they now exist, the appointment of Finnerud was legal, and was for the full unexpired term of McIntyre, and that he is now entitled to the office. We conclude, also, that the nomination, confirmation, and appointment of G. J. Coller was unauthorized and void. No other conclusion seems admissible under any principle of law or decided case called to our attention. The restraining order issued in this case is dissolved, and the action is dismissed.