**GEORGE A. FRIX v. STATE OF FLORIDA, ex rel., FRANK E. LAUTZ**

33 So. (2nd) 854                                    June Term, 1947
November 21, 1947                                   Division B
Rehearing denied December 10, 1947

*Thomas H. Anderson,* for appellant.

*Mitchell D. Price, Zaring, Florence & Barfield,* for appellee.

BUFORD, J.:

The appeal brings for review judgment in quo warranto against the respondent.

The bone of contention is the office of City Commissioner of the village of Miami Shores. On June 17, 1947 a regular election was held for the purpose of filling three positions upon the Village Council. There were six candidates, the ap-

pellee, Frank E. Lautz, being one of them. George A. Frix was not a candidate. While the vote was being tabulated one W. H. McKee, a member of the Village Council who had served for two years and who held under a four year term, tendered his resignation in a sealed envelope. This resignation was handed to the Village Clerk and Village Manager while the vote was being counted, but apparently was not opened until after the vote was counted and the results ascertained and determined. The appellee, Frank E. Lautz, was not one of the three who received the highest votes but he received the fourth highest vote. The Village Council after receiving the resignation of the said W. H. McKee and after ascertaining and determining that Frank E. Lautz had received the fourth highest vote, proceeded to select George A. Frix to fill the vacancy caused by the resignation of the said W. H. McKee. Whereupon, the said Frank E. Lautz suing in the name of the State of Florida filed an information in the nature of quo warranto and cited the said George A. Frix to appear and show cause why he should not be removed from said municipal office and why he, the said Frank E. Lautz, should not be installed as the one entitled to hold said office under Section 1, Article III of the special Laws of 1941.

Motion to strike and demurrer were filed and overruled, then answer was filed which admitted all the material allegations of the information. There being no issue of fact presented, counsel for appellee set the cause down on bill and answer with motion for final judgment. Final judgment was entered ousting respondent-appellant and he appealed.

The pleadings show that the matter which precipitated·this litigation was as follows:

"That when the said W. H. McKee learned that the said Frank E. Lautz had not been elected to one of the three places on the Town Council, the election to fill which had just been concluded, he, the said McKee, delivered to C. Lawton McCall, the Clerk of Miami Shores Village, a sealed envelope without divulging to the said McCall what the contents of said envelope were, and thereupon the said McKee departed from the Village Hall; that afterwards, on the same day and within a few minutes after the delivery to the said McCall of said

envelope by the said McKee, the Village Council convened and canvassed the ballots and votes, and declared that the vacancies on the said council caused by the expiration of the terms of M. E. Reynolds, James C. Kilburn and John G. Thompson, had been filled by the election of Roy Mackenzie, M. E. Reynolds and Howard Parish, after which the said C. Lawton McCall delivered to the Mayor of said Village the aforesaid envelope, stating to him the circumstances under which it was delivered, and upon the envelope being opened at the direction of said council, it was found to contain a statement to the effect that the said W. H. McKee had resigned; thereafter the said council accepted the said resignation and declared the place held on said council by the said W. H. McKee to be vacant, and thereupon, in accordance with an unbroken rule of construction which had been previously applied by the council of the Miami Shores Village from the creation of said Village in 1931 to the present time, it filled the vacancy existing in the office of the Village Council caused by the resignation of the said McKee by the appointment of the respondent to serve until the next regular election."

Section 1 of Article III of the Charter Act provides;

"Section 1. The Village shall be governed by a council of five qualified electors. The terms of John M. Carlisle and Otto H. Goll shall expire on the third Tuesday in June, 1939, and the terms of F. Scott Kitson, John J. Lindsey and Frank O. Pruitt shall expire on the third Tuesday in June, 1937, but each shall continue in office until his successors be elected and qualified. Vacancies to succeed Councilmen as their terms expire shall be filed on the third Tuesday in June of this and each alternate year by votes of a majority of the qualified electors of the Village voting at elections of such days, and special or run off elections shall be held to choose between two candidates for each or any vacancy receiving the highest number of votes if an insufficient number of candidates receive a majority of votes in the first election; the term of each Councilman elected in 1937 and thereafter shall be four years, provided that the term of office of the Councilman who shall be elected by the third highest number of votes at the elections in June 1941 and at biennial elections thereafter shall be

two years; that the Council may fill vacancies from time to time in any office, ad interim until the next regular election and the candidate receiving the fourth highest number of votes at such regular election shall be elected to fill such unexpired term, (if additional unexpired term shall exist by reason of another vacancy on said Council then the candidate in such regular election receiving the fifth highest vote shall be elected to fill such unexpired term) and shall serve thereunder only during such unexpired term, the term of office remaining unchanged. The Council annually at the first meeting in July, shall elect one of their number as Mayor who shall preside over the Council and shall be official head of the village."

Thus it is seen that the Charter provided for a general election to be held on a certain day every two years, beginning with June, 1941, at which two successor Councilmen would be elected for a term of four years and one successor Councilman would be elected for a two year term. Thus there would always be (unless vacancies occurred) at least two members of the Council who has served for two years.

For the filling of vacancies the Charter provides:

"That the Council may fill vacancies from time to time in any office, ad interim until the *next regular* election and the candidate receiving the fourth highest number of votes at *such regular election* shall be elected to fill such unexpired term (if additional unexpired term shall exist by reason of another vacancy on said Council then the candidate in such regular election receiving the fifth highest vote shall be elected to fill such unexpired term) and shall serve thereunder only during such unexpired term, the term of office remaining unchanged." (Emphasis supplied).

We are called upon to construe this provision of the Charter Act and of course in pari materia with the other parts of the Act. We find no ambiguity in the language and nothing confusing in the context.

Therefore we must construe the language to mean just what it says, which leads us to what we think is an inevitable conclusion that if a Councilman has been elected for a term resigns them the remaining Councilmen are required to ap-

point some one to fill the vacancy until the next ensuing general election at which time if such term does not then expire some one shall be elected to fill the then unexpired term, and the person so elected shall be the one receiving the fourth highest vote in this first general election occurring after the resignation. The voters would be presumed to know of the existing condition, that in such case four Councilmen would be elected and that the candidate receiving the fourth highest vote would be elected to fill such unexpired term and would cast their ballots in the light of this knowledge.

It is established beyond question that Councilman McKee resigned after the general election in June, 1947. Therefore, the Council had thrust upon it the duty of appointing a successor to serve until the next ensuing general election, which is to occur in June, 1949. The Council performed this duty by appointing George A. Frix.

When the election occurred in June, 1947, there had been no resignation and there was therefore no unexpired term of a resigned Councilman to be filled by election.

It is contended by appellee that under the provisions of the Charter Act supra the Council was bound to fill the vacancy by appointing the man who (if qualified) received the fourth highest vote in the last *preceding* general election and the learned Circuit Judge so held. We cannot agree with this construction because the wording of the Charter Act is otherwise. The Charter provides that the Council may fill a vacancy until the *next general* election and that the candidate receiving the fourth highest vote at *such general* election shall be elected to fill such unexpired term. The words "such regular election" refer to the last antecedent "next regular election." See Words and Phrases, Vol. 40, pp. 562, et seq; Crawford on Statutory Construction, pars. 186-193, inclusive. See also Wainwright v. Fare, 22 Okla. 831, 97 P. 831; Watson v. Cobb, 2 Kan. 32; State ex rel. Livesay v. Smith, 35 Mont. 523, 90 p. 750; Wendorff v. Dill, 83 Kan. 782, 112 p. 588; Jay v. Gifford, 22 Idaho 301, 125 p. 181; State ex rel. Halback v. Claussen, 216 Ia. 1079, 250 N.W. 195; State ex rel. McGee v. Gardner, 3 S.D. 553, 54 N.W. 606; People v. Colorado, 132 Col. 334, 64 p. 447.

It follows that we must reverse the judgment appealed from with directions that the same be vacated and that the information be dismissed.

So ordered.

THOMAS, C. J., ADAMS, and BARNS, JJ., concur.