## OPINION OF THE JUDGES.
## Re LEGISLATIVE REAPPORTIONMENT.

(246 N. W. 295.)

(Opinion filed January 12, 1933.)

, Opinion of the Judges of the Supreme Court, in answer to a question propounded by the Governor of the State relating to the authority of the Legislature to pass a legislative reapportionment act in the session of 1933.

Question answered in accordance with opinion.

To His Excellency,

The Governor of the State of South Dakota,

Sir:

We have the honor to acknowledge your recent communication wherein, pursuant to the provisions of section 13 of article 5 of the Constitution of South Dakota, you propound to us the follow-

ing question: "Has the legislature the right to pass in the session of 1933, and has the Governor the right to sign, a law apportioning the senators and representatives, in accordance with Section 5, of Article 3, of the Constitution of this State; and, if passed and signed, will such law be a valid legislative apportionment?"

██ ██ We have been gravely in doubt as to whether we could properly make answer to your inquiry. The nature and extent of the authority granted the Governor to require opinions of the judges of this court (and the corresponding duty imposed upon the judges) by section 13 of article 5 of our Constitution have been frequently discussed in prior opinions and do not require further elucidation at this time. We are convinced that the purpose of that constitutional provision is, as was stated upon the floor of the Constitutional Convention at the time it came into our law (Constitutional Debates 1885, page 391), to grant the Governor "authority to call upon the Judges of the Supreme Court for their opinions on important legal questions which are *involved in the discharge of the duty of the Executive.*" It seems to us quite doubtful whether your present inquiry submits any question necessarily involved in the discharge of your duty as chief executive of the state. However, we have taken into consideration the fact that it is your duty as chief executive, under section 4 of article 4 of the Constitution, to recommend to the Legislature such measures as you shall deem expedient, and we realize that you as chief executive would not wish to urge that the Legislature take action at this time concerning the matter of apportionment if they were forbidden so to do by the Constitution. We have also considered the fact that your inquiry raises a question strictly publici juris and involves no private rights, and the further point that your principal inquiry does not go generally to the constitutionality of any proposed legislation as dependent upon the form or contents of the legislation, but goes exclusively to the question of whether or not the Constitution expressly forbids the Legislature from acting at all with reference to certain subject matter at the present session. We are mindful also of the fact that our state in common with the entire nation is facing conditions to-day which are most unusual and in many respects perilous. It is, we think, a time when the separate and co-ordinate branches of the government of this state, executive, legislative, and judicial, should co-operate to the fullest

extent possible for the public welfare. You have said in your communication to us that in your opinion the present Legislature, if constitutionally justified in acting at all upon the matter of apportionment will be able to act in such fashion as to effect economies of great importance and most helpful to the people of this state. We would deem it extremely unfortunate if a public benefit such as you anticipate should be rendered impossible of accomplishment, or even more difficult of accomplishment, solely because we, as judges of this court, took too narrow a view of your authority and our duty under section 13 of article 5 of our Constitution. Particularly in the light of present circumstances and conditions, we believe that if we err in determining what may be our duty in the premises such error should be upon the side of liberality. Influenced, therefore, by these various considerations, we have arrived, though not without considerable hesitation, at the conclusion that we ought to answer the question propounded.

Your inquiry, of course, involves the interpretation of section 5 of article 3 of the Constitution of South Dakota, which reads as follows: "The legislature shall provide by law for the enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at its first regular session after each enumeration and also after each enumeration made by authority of the United States, but at no other time, the legislature shall apportion the senators and representatives according to the number of inhabitants, excluding Indians not taxed and soldiers and officers of the United States army and navy. Provided, that the legislature may make an apportionment at its first session after the admission of South Dakota as a state."

The Twenty-Second Legislature, meeting in 1931, being the first regular session after the last federal census, failed to comply with the mandate of section 5 and made no apportionment as thereby required. Your question is whether the Twenty-Third Legislature now in session has the authority in the premises which should have been exercised by the Twenty-Second Legislature, but was not.

██ ██ This question seems not particularly difficult, and all the cases we have discovered relevant thereto appear to point in one direction. The Constitutions of many of the states contain

provisions very similar to our own with reference to the matter of apportionment. In most of them, however (in fact, in all which we have examined excepting those of Arkansas and Nebraska), we fail to find the words "but at no other time." That is to say, in most of the comparable constitutional provisions there is affirmative mandate for action at a certain specified time but no express prohibition of action at other times. We do not, however, regard that fact as particularly material. It seems to be held by all the courts which have had occasion to pass upon the matter that an affirmative mandate for legislative action at a specific time is an implied prohibition of action at any other time. Slauson v. City of Racine (1861) 13 Wis. 398; Denney v. State ex rel Basler (1896) 144 Ind. 503, 42 N. E. 929, 31 L. R. A. 726; People ex rel Mooney v. Hutchinson (1898) 172 Ill. 486, 50 N. E. 599, 40 L. R. A. 770; Wheeler v. Herbert (1907) 152 Cal. 224, 92 P. 353. We think no valid distinction can be based upon the point that in our Constitution the prohibition against action at any other time is express rather than implied. We think the clause of our Constitution expressly forbidding action "at no other time" is part and parcel of and inseparable from the affirmative command requiring action at the first session after each enumeration. The framers of our Constitution did not, we think, have in mind the possibility that a Legislature might disobey the constitutional mandate and might fail to make an apportionment at the time when that duty was affirmatively imposed upon them by the Constitution. It seems quite apparent that the framers of the Constitution in providing for apportionment "at its first regular session, after each enumeration * * * but at no other time," meant to say only this and nothing more: That the Legislature should make an apportionment at the first session after an enumeration as affirmatively required by the Constitution, and having so done (as the Constitution makers assumed they would) they should not again exercise such power until after another enumeration. It was intended, we think, to express substantially the same idea which is embodied in the Constitution of New Jersey (article 4, § 3) in the following language: "* * * The present apportionment shall continue until the next census of the United States shall have been taken, and an apportionment of members of the general assembly shall be made by the legislature at its first session after the next

and every subsequent enumeration or census, and when made shall remain unaltered until another enumeration shall have been taken. * * * "

In all cases which we have been able to find upon the point where the Constitution affirmatively requires apportionment at a specific time (usually the first session after enumeration), it is held that such duty is mandatory upon the Legislature (though they are not compellable thereto by any court), and, notwithstanding the fact that there is an implied prohibition against so doing at any other time, such prohibition is conditioned upon the prior per- formance of the affirmative duty and does not come into operation until the duty mandatorily imposed has been exercised. In other words, when a Legislature once makes an apportionment following an enumeration no Legislature can make another until after the next enumeration, but the duty to make the apportionment follow- ing the enumeration continues until performed even though the Legislature fails to observe the constitutional mandate and fails to perform such duty at the first session after the enumeration.

" * * * The Constitution should be construed as imposing a duty of reapportionment, and that the duty so imposed continues until performed." State ex rel Meighen v. Weatherill (1914) 125 Minn. 336, 147 N. W. 105, 107.

" * * * The same may be said of the obligation to make the apportionment. If it be not made at the first session after the re- turn of the enumeration, the duty to make it devolves upon the legislature at the next and each following session, until the duty is performed. It cannot be tolerated that a legislature, by a mere omission to perform its constitutional duty at a particular session, could thereby prevent for another 10 years, the apportionment provided for by the constitution. * * * " People ex rel Carter v. Rice (1892) 135 N. Y. 473, 31 N. E. 921, 926, 16 L. R. A. 836.

" * * * The question presented for decision is whether the Legislature, sitting in the year next succeeding the promulgation of a federal census, can defeat that scheme, so far as it deals with the matter of the distribution of members of the General Assembly among the several counties of the state, by refusing or neglecting to make the apportionment required by article 4, § 3. In our opinion, the right of the inhabitants of the several counties of the

state to be accorded the representation in the lower house, provided by the Constitution, cannot be defeated by such nonaction of the Legislature. It is true that the clause requiring the Legislature sitting next after the promulgation of the federal census to make the apportionment is mandatory; but disobedience of that mandate cannot produce the result claimed by the relator. The failure to perform the duty cannot cancel the legislative obligation. In other words, as was stated by Peckham, J., in the case of People ex rel Carter v. Rice, 135 N. Y. 473, 31 N. E. 921, 16 L. R. A. 836, similar in its legal aspect to that now before us, the duty is a continuous one, and is cast in turn upon each Legislature succeeding that which has defaulted in the performance of the obligation, until the obligation is fulfilled; that is to say, if the apportionment is not made in the first session after the return of the enumeration, the duty to make it devolves upon the Legislature then next sitting and upon each following Legislature until that duty is performed. * * *" Botti v. McGovern (1922) 97 N. J. Law, 353, 118 A. 107, 108.

"The duty is a continuing one, and, if it is not discharged at or within the time prescribed, the burden of its performance rests upon successive General Assemblies until the section has been obeyed." Fergus v. Kinney (1928) 333 Ill. 437, 164 N. E. 665, 666.

Upon these propositions we have failed to find any dissenting voice in the reports, or any authority which would support or tend to support a contrary view. It may also be noted, for whatever the point may be worth, that legislative precedent in this state has been entirely in accord with the cases above cited. The Seventh Legislature in 1901, being the first regular session after the federal census of 1900, entirely failed to pass an apportionment act as required by the Constitution, notwithstanding the fact that the Governor in his inaugural message brought the matter to their attention, pointing out the constitutional duty and stating that: "The partisan inequality of existing law is most flagrant. It stands as a monument of iniquity. Let the new apportionment be what the constitution directs and the people expect." House Journal 1901, p. 26. The Seventh Legislature having failed to perform its constitutional duty, the Eighth session, sitting in 1903, assumed the duty and passed an apportionment measure (chapter 12, Laws

1903), the validity of which appears never to have been challenged and which continued operative until the effective date of chapter 13, Laws 1907.

We have no hesitancy, therefore, in answering your inquiry in the affirmative save only the last clause thereof wherein you inquire, " * * * and, if passed and signed, will such law be a valid legislative apportionment?" You will readily perceive that we cannot undertake to answer that portion of your inquiry. You can hardly expect us to pass generally upon the constitutionality and validity of a legislative act, the possible form and contents of which are entirely unknown at the present time to the Legislature, to yourself, and to us. We can and do say only this and no more. If the Legislature now sitting passes an apportionment act, such act will not in our opinion be open to successful attack upon the ground that the present session lacked constitutional power to deal with the subject-matter of apportionment under section 5 of Article 3 of the Constitution of this state.

<div style="text-align:center">

Yours very respectfully,

DWIGHT CAMPBELL,
Presiding Judge.
SAMUEL C. POLLEY,
E. D. ROBERTS,
FREDERICK A. WARREN,
HERBERT B. RUDOLPH,
Judges.