George KANE, Individually, and the South Dakota Democratic Party, Appellants,

v.

Alice KUNDERT, Secretary of State, Appellee.

Nos. 14905, 14906.

Supreme Court of South Dakota.

Argued May 21, 1985.

Decided July 17, 1985.

Jeff Masten of Masten, Myrabo & Irons, P.C., Canton, for appellants.

Thomas Harmon, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

FOSHEIM, Chief Justice.

George Kane (Kane) and the South Dakota Democratic Party appeal from an Order denying their application for a preemptory Writ of Mandamus. The application sought to require Appellee, Secretary of State Alice Kundert (Kundert), to issue Kane a Certificate of Election for the position of Commissioner of School and Public Lands. Kundert filed a Notice of Review. We affirm.

Mr. Julian Cheney was elected Commissioner of School and Public Lands at the November, 1982, general election. He died on January 16, 1983. Several successive appointments have been made to fill the vacancy. The position is presently held by Sheldon Cotton.

On June 25, 1984, Kane was certified to Kundert by the South Dakota Democratic Party as the nominee of that party for the Office of Commissioner of School and Public Lands at the 1984 general election. The Republican Party did not nominate a candidate. No independent candidate filed for the position. Kundert refused to place Kane's name on the general election ballot.[1]

Kane argues that application of the standard two-tiered analysis compels the conclusion that SDCL § 3–4–6, as amended by HB 1328 [SDCL § 3–4–6 (Supp.1984)] violates the equal protection guarantees of the state and federal constitutions. He contends the statute as amended creates two classes of elected officials—those elected to a State office and all others. Kane further argues that by terminating the election process with respect to State officials, the 1984 amendment to SDCL § 3–4–6 unconstitutionally infringes upon the right to vote and that HB 1328 was impermissibly applied retroactively.

Kundert counters that SDCL § 3–4–6, as amended by HB 1328, does not create an invidious classification which is the basic requirement for invoking the equal protection analysis. She maintains that unequal access to the ballot, condemned by the United States Supreme Court in *Illinois State Elections Board v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), is not present in this case. All citizens are treated alike. Since no election is held, there is no right to appear on the ballot as a candidate to fill a vacancy. Consequently, the amended statute does not impermissibly distinguish between parties or individuals with regard to access to the ballot or the office.

The trial court issued an alternative writ but concluded that Kundert was correct in refusing to issue a certificate of election to applicant Kane.

In a Notice of Review, Kundert presents the additional ground for denying Kane's application that HB 1328 simply codified a result compelled by the 1972 revised article IV of the South Dakota Constitution and prior decisions of this court. We first address this argument because it is dispositive of all issues.

1. Appellants filed a Petition for Writ of Mandamus with this Court on August 10, 1984, to place Kane's name on the ballot. We issued an Alternative Writ on August 22, 1984. A preemptory Writ was later denied. On November 16, 1984, Kane requested a Certificate of Election from Kundert, which was declined. Kane then requested a Writ of Mandamus from this court on November 28, 1984. We denied that request without prejudice to his right to pursue the petition in circuit court.

■ The Legislature is vested with authority to deal with any subject within the scope of civil government, except insofar as it is restrained by constitutional provisions, or by the valid treaties and acts of Congress. 73 Am.Jur.2d Statutes § 33 (1974). *In re Oahe Conservancy Subdistrict*, 85 S.D. 443, 185 N.W.2d 682 (1971). Article IV, section 6 of the South Dakota Constitution specifies the order of succession when a vacancy in the office of the Governor occurs but our Constitution is otherwise silent as to filling vacancies in other state offices. This constitutional deference to the Legislature leads us to SDCL § 3-4-6. When the vacancy occurred, that statute read, in pertinent part:

Appointments as herein provided shall be made in writing, and made to continue until the next general election at which the vacancy can be filled, and until a successor is elected and qualified.

The 1984 Legislature amended SDCL § 3-4-6 with HB 1328. It now reads:

Appointments to state offices shall be made in writing and shall continue for the remainder of the unexpired term of office. All other appointments shall be made in writing and shall continue until the next general election at which the vacancy can be filled, and until a successor is elected and qualified.

■ In 1972 article IV of the South Dakota Constitution relating to the Executive Department was completely revised. The pertinent part of section 2 of that article provides: "The Governor ... shall be elected for a term of four years at a general election held in a nonpresidential election year...." Section 7 of article IV further mandates, "There shall be chosen by the qualified electors of that state at the general election of the Governor and every four years thereafter the following constitutional officers: ... commissioner of school and public lands, who shall severally hold their offices for a term of four years." When these two constitutional provisions are read together, it clearly appears that the election of a Commissioner of School and Public Lands for a four-year term was required in 1982. When there is an affirmative constitutional mandate for legislative action at a certain specified time, there is an implied prohibition of action at any other time. *In re Opinion of the Judges*, 61 S.D. 107, 246 N.W. 295 (1933). There is no inherent reserved power in the people to hold an election to fill a vacancy in an elective office. Such an election can only be held when authorized by law. *In re Supreme Court Vacancy*, 4 S.D. 532, 57 N.W. 495 (1894); *State ex rel. McGee v. Gardner*, 3 S.D. 553, 54 N.W. 606 (1893). Accordingly, no election for Commissioner of School and Public Lands is authorized in a presidential election year. Any vacancy filling statute attempting to structure such an election at a presidential election year would conflict with the election times, and the four-year term, mandated in sections 2 and 7 of article IV.

Kane calls our attention to *State ex rel. Rearick v. Board of Commissioners*, 34 S.D. 256, 145 N.W. 548 (1914), in support of his position that the vacancy could be filled in the 1984 general election. In the decision, this court held:

It is the general policy of the law to fill vacancies in elective offices at an election as soon as practicable after the vacancy occurs.... The statute declares it is a vacancy which is to be filled at the next general election—which clearly means nothing more or less than that some one shall be elected to fill the office during the unexpired term—not that the vacancy must be one existing or continuing until the next general election.

. . . .

In the case before us, the vacancy, as clearly contemplated by the statute, is one which may be filled at a general election. The statute in no wise distinguishes the filling of any such vacancies according to the length of term—whether two or four years.

*Id.* at 260–61, 145 N.W. at 549–550. That decision upheld an election midway in a four-year term. It rested on statutes relating to the office of county commissioner and was expressly conditioned with this language. "This conclusion, however, rests on the assumption that the election was one authorized by law. The question decisive of this appeal, therefore, is whether an election to fill the vacancy ... can lawfully be held...." *Id.* at 259, 145 N.W. at 549. The rationale of that decision operates against Kane's position since no election for Commissioner of School and Public Lands was authorized in 1984 and conversely was implicitly prohibited by article IV of the South Dakota Constitution. *See also Noel v. Cunningham,* 68 S.D. 606, 5 N.W.2d 402 (1942).

■ It is rudimentary that a statute must serve and cannot abrogate the Constitution. Consequently, any vacancy appointment made pursuant to SDCL § 3–4–6, (with or without the 1984 amendment), must relate to the unexpired four-year term prescribed by the Constitution. *See State ex rel. Holmes v. Finnerud,* 7 S.D. 237, 64 N.W. 121 (1895). The language in SDCL § 3–4–6 that appointments shall be made to continue until the next general election at which the vacancy can be filled means the next election at which it is provided by law that the officer may be elected whose office has become vacant. *State ex rel. McGee v. Gardner, supra.* That will be in 1986. HB 1328 therefore changed nothing. The result would be the same if it had never been enacted. Being of no consequence, whether it violates the state and federal constitutions is unnecessary to decide. Kane does not claim SDCL § 3–4–6, as it read when the vacancy occurred, was unconstitutional nor does he contend sections 2 and 7 of article IV of the

South Dakota Constitution violate the United States Constitution. Likewise, the claimed retroactive application of HB 1328 is rendered irrelevant.

■ We conclude that since there was no authority to hold a general election for the Office of Commissioner of School and Public Lands in 1984, the trial court properly refused to require the Secretary of State to certify the election of Kane for that position. The order denying the application for preemptory Writ of Mandamus is affirmed.

WOLLMAN and MORGAN, JJ., and WUEST, Circuit Court Judge, Acting as a Supreme Court Justice, concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

I wish to specially concur to express: (1) The appointment by the Governor of the State Treasurer in April 1983 [1] to the office of Commissioner of School and Public Lands until the unexpired term could be filled at the next general election was void. These two offices are separate and distinct with individual salaries and varied responsibilities and cannot constitutionally be held by the same individual.[2] S.D. Const. art. IV, § 7. The constitution refers to different constitutional officers "who shall *severally* hold their offices for a term of four years." S.D. Const. art. IV, § 7 (emphasis supplied). (2) The law known as HB 1328 was a nullity as concerns constitutional officers—for the language of Mother Consti-

---

1. The State Treasurer resigned from the position of Commissioner of School and Public Lands on July 25, 1984. Jack Gerken, via gubernatorial appointment, assumed the office on August 2, 1984; he resigned on November 30, 1984. Sheldon Cotton received a gubernatorial appointment on December 17, 1984, and continues to serve in that capacity.

2. For historic purposes, I take judicial notice of official returns in the State Auditor's Office that a constitutional amendment to combine the offices of the State Treasurer and the Commissioner of School and Public Lands was submitted to a vote of the people in November 1984 and was defeated.

tution prevails.[3] It would bode those well, in the Executive and Legislative Branches, and their staffs, to read the constitution before passing extraneous legislation. It is the source and power of all law and should be consulted, from the inception, when weighty affairs of state surface in the public arena.

---

**3.** I do not cast aside the long-standing precedent and public policy enunciated in *State ex rel. Rearick v. Bd. of Comm'rs of Lyman County,* 34 S.D. 256, 145 N.W. 548 (1914), and *Noel v. Cunningham,* 68 S.D. 606, 5 N.W.2d 402 (1942), relative to offices, other than state offices, being filled by appointment and such appointees holding office only until the vacancy can be filled by electors at a general election.