Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596
HTML Code Â© State Bar of South Dakota, 1999
In The Matter Of The Certification Of A Question Of Law
From The United States District Court,
District Of South Dakota, Western Division,
Pursuant to the Provisions of SDCL 15-24A-1, and
Concerning Federal Actions Civ. 00-3008 and Civ. 00-3015 (D.S.D.),
Titled as Follows:
STEVEN C. EMERY,
Rocky Le Compte, and James Picotte,
Plaintiffs,
v.
ROGER HUNT,
in his official capacity as Speaker of the South Dakota House of Representatives,
the South Dakota House of Representatives,
Carole Hillard, in her official capacity as
President of the South Dakota Senate, South Dakota Senate,
and Joyce Hazeltine, in her official capacity as
Secretary of the State of South Dakota,
Defendants.
[2000 SD 97]
United States of America,
Plaintiff,
v.
State of South Dakota,
William J. Janklow, in his official capacity
as Governor of the State of South Dakota,
Harold Halverson, in his official capacity
as the President Pro Tempore of the Senate of the State of South Dakota,
Roger Hunt, in his official capacity
as the Speaker of the House of Representatives of the State of South Dakota,
Mark W. Barnett, in his official capacity
as Attorney General of the State of South Dakota,
and County Auditors for Butte, Corson, Dewey, Harding,
Perkins and Ziebach Counties, in their official capacities,
Defendants.
South Dakota Supreme Court
Original Proceeding
#21504
Laughlin McDonald, Bryan Sells
American Civil Liberties Foundation, Atlanta, GA
Patrick Duffy, Rapid City, SD
Attorneys for Plaintiffs Steven C. Emery, Rocky LeCompte and James Picotte.
Ted L. McBride, United States Attorney, Rapid City, SD
Bonnie Ulrich, Assistant United States Attorney, Sioux Falls, SD
Bill Lann Lee, Acting Assistant Attorney General for Civil Rights
Joseph D. Rich, Christopher Coates, Richard Dellheim
Voting Section-Civil Rights Division, Washington, DC
Attorneys for Plaintiff United States.
Mark Barnett, Attorney General
John P. Guhin, Deputy Attorney General
Sherri Sundem Wald, Assistant Attorney General, Pierre, SD
Attorneys for Defendants.
Considered on Briefs Jul 13, 2000; Opinion Filed Jul 26, 2000
AMUNDSON, Justice.
[Â¶1] Pursuant to SDCL 15-24A-1, District Judge Charles B. Kornmann of the United States District Court, District of South Dakota, certified to this Court the following question:


Whether the South Dakota Legislature acted in violation of Article III, Section 5 of the South Dakota Constitution, by the enactment of Chapter 21, Session laws of 1996, now codified as SDCL 2-2-28.
In his certification, Judge Kornmann indicated that it appears there is no controlling precedent on this issue in the decisions of this Court. As set forth below, the question is controlled by our decision in In re Opinion of Judges, 61 SD 107, 246 NW 295 (1933) and is answered in the affirmative.

FACTS AND PROCEDURE

[Â¶2] Plaintiffs in the District Court action are the United States and individual plaintiffs, Steven C. Emery, Rocky LeCompte, and James Picotte. The individual plaintiffs are voters and residents of Dewey County within legislative District No. 28 and are enrolled members of the Cheyenne River Sioux Tribe. They brought action in United States District Court against defendants who are Speaker of the South Dakota House of Representatives Roger Hunt, the South Dakota House of Representatives, President of the South Dakota Senate Carole Hillard, the South Dakota Senate, and Secretary of the State of South Dakota Joyce Hazeltine, all in their official capacities. They claimed that the current at-large election plan in legislative District No. 28 violates Section 2 of the Voting Rights Act of 1965, 42 USC Â§ 1973, as amended, and is unauthorized by Article III, Section 5 of the South Dakota Constitution. The United States filed a similar action limited to a claim of violation of the federal statute. Defendants in that action are the State of South Dakota, Governor William Janklow, President Pro Tempore of the South Dakota Senate Harold Halverson, Speaker of the House of Representatives Roger Hunt, Attorney General of the State of South Dakota Mark Barnett, Secretary of the State of South Dakota Joyce Hazeltine, and the county auditors for Butte, Corson, Dewey, Harding, Perkins and Ziebach counties, all in their official capacities.
[Â¶3] Following consolidation of these cases and upon motion by the State defendants, the District Court certified the above question of state law to this Court, which we accepted.

ANALYSIS AND DECISION

[Â¶4] Article III, Section 5 of the South Dakota Constitution sets forth an affirmative mandate to the South Dakota Legislature for apportionment of its membership. It provides:


The Legislature shall apportion its membership by dividing the state into as many single-member, legislative districts as there are state senators. House districts shall be established wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine. Legislative districts shall consist of compact, contiguous territory and shall have population as nearly equal as is practicable, based on the last preceding federal census. An apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991. Such apportionment shall be accomplished by December first of the year in which the apportionment is required. If any Legislature whose duty it is to make an apportionment shall fail to make the same as herein provided, it shall be the duty of the Supreme Court within ninety days to make such apportionment.
(emphasis added). In 1991, following the 1990 decennial census, the Legislature enacted SDCL 2-2-28, which then provided:


Each representative district as provided for in Â§ 2-2-26 is entitled to two representatives. However, in order to protect minority voting rights, District No. 28 shall consist of two single-member house districts as follows:

(1) District No. 28A--Dewey and Ziebach counties and that portion of Corson county consisting of Bullhead, Kenel, Liberty, Little Oak, Little Eagle, McLaughlin, Ridgeland and Wakpala precincts.
(2) District No. 28B--Harding and Perkins counties and that portion of Corson county consisting of Delaney, Grand Valley, Lincoln, McIntosh, Morristown and Wautauga precincts, and the cities of McIntosh, McLaughlin and Morristown, and that portion of Butte county west of U.S. Highway 85, north of U.S. Highway 212 and east of S.D. Highway 79, excluding the cities of Belle Fourche and Nisland.
In 1996, the Legislature amended this statute as follows: "Each representative district as provided for in Â§ 2-2-26 is entitled to two representatives." We are asked to determine whether this 1996 amendment violates Article III, Section 5 of our Constitution which mandates apportionment in 1991 and every ten years thereafter. Clearly, the 1996 amendment reapportions legislative membership by eliminating Districts No. 28A and 28B.
[Â¶5] "The Legislature is vested with authority to deal with any subject within the scope of civil government, except insofar as it is restrained by constitutional provisions, or by the valid treaties and acts of Congress." Kane v. Kundert, 371 NW2d 172, 174 (SD 1985) (citations omitted). "If constitutional power does not exist, it cannot be acquired by legislative assertion." State ex rel. Oster v. Jorgenson, 81 SD 447, 450, 136 NW2d 870, 871 (1965). "'The Constitution is the mother law. It is not the baby. Statutes must conform to the Constitution, not vice versa.'" Poppen v. Walker, 520 NW2d 238, 242 (SD 1994) (quoting Cummings v. Mickelson, 495 NW2d 493, 507 (SD 1993) (Henderson, J., concurring in part; dissenting in part)).
[Â¶6] In In re Opinion of the Judges, 61 SD 107, 246 NW 295 (1933), we answered an inquiry from the Governor regarding the authority of the Legislature to enact a reapportionment measure in the 1933 legislative session. The question required interpretation of Article III, Section 5 of the South Dakota Constitution, which at that time read, in relevant part, that the legislature shall apportion its membership in 1895 and every ten years thereafter and at no other time. (fn1)  When this question was raised, the first legislature meeting after the last federal census was the Twenty-Second Legislature, which met in 1931. It failed to make an apportionment as required by the Constitution. Having failed to perform this duty, the question then became whether the Twenty-Third Legislature had the authority to exercise this duty and make an apportionment. We answered in the affirmative, noting the duty continues until performed.
[Â¶7] In arriving at this answer, the constitutions of several other states were examined and found to contain language similar to our own regarding apportionment. We noted: "It seems to be held by all the courts which have had occasion to pass upon the matter that an affirmative mandate for legislative action at a specified time is an implied prohibition of action at any other time." Opinion, 61 SD at 111, 246 NW at 296 (emphasis added). The fact that the prohibition in our constitutional provision was expressed rather than implied was not held to be a valid distinction. Id. We continued:


The framers of our Constitution did not, we think, have in mind the possibility that a Legislature might disobey the constitutional mandate, and might fail to make an apportionment at the time when that duty was affirmatively imposed upon them by the Constitution. It seems quite apparent that the framers of the Constitution in providing for apportionment 'at its first regular session, after each enumeration ... but at no other time,' meant to say only this and nothing more: That the Legislature should make an apportionment at the first session after an enumeration as affirmatively required by the Constitution, and having so done (as the Constitution makers assumed they would) they should not again exercise such power until after another enumeration.
...
In other words, when a Legislature once makes an apportionment following an enumeration no Legislature can make another until after the next enumeration ... .
Id., 61 SD at 111-12, 245 NW at 296-97 (emphasis added).
[Â¶8] Here we address not the Legislature's failure to act to perform its constitutional duty but whether the Legislature had authority to act when it amended SDCL 2-2-28 in 1996. The holding of Opinion instructs that because the Legislature did perform its constitutional duty when it enacted apportionment legislation in 1991 following the 1990 federal census, it lacked constitutional authority to make another apportionment until after the next federal census.
[Â¶9] We reinforced this holding in 1985: "When there is an affirmative constitutional mandate for legislative action at a certain specified time, there is an implied prohibition of action at any other time." Kane, 371 NW2d at 174 (citing Opinion, supra). Kane was decided after Article III, Section 5 had been amended in 1982. As in Opinion, we determined in Kane that even without the express prohibition, the affirmative mandate for legislative action precludes action at any other time. The constitutional provision, as amended, reads, in part, that "[a]n apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991." This language is mandatory and does not contemplate that the Legislature will fail to make an apportionment every ten years after 1991, nor does it provide, as interpreted in Opinion and reinforced in Kane, for an apportionment to be made at any other time after that duty has been discharged. The Sixty-sixth Legislature, sitting in 1991, apportioned its membership by enacting SDCL 2-2-28. There is no constitutional authority for another legislative apportionment until 2001. Any other conclusion must reverse these two long-standing precedents.
[Â¶10] Other jurisdictions, examining state constitutions with provisions similar to the 1982 amendment, that is, with no express prohibition of apportionment at a time other than that constitutionally prescribed, have reached the same conclusion. "It is the general rule that once a valid apportionment law is enacted no future act may be passed by the legislature until after the next regular apportionment period prescribed by the Constitution." Harris v. Shanahan, 387 P2d 771, 779-80 (Kan 1963); Lamson v. Sec'y of Commonwealth, 168 NE2d 480, 483 (Mass 1960); Opinion of the Justices, 47 So2d 714, 716 (Al 1950); Jones v. Freeman, 146 P2d 564, 573 (Okla 1943); People ex rel. Mooney v. Hutchinson, 50 NE 599, 601 (Ill 1898); People ex rel. Carter v. Rice, 31 NE 921, 926 (NYCtApp 1892); 25 AmJur2d Elections Â§Â§ 7-9 (1999).


If legislative power is given in general terms, and is not regulated, it may be exercised in any manner chosen by the legislature; but where the constitution fixes the time and mode of exercising a particular power it contains a necessary implication against anything contrary to it, and by setting a particular time for its exercise it also sets a boundary to the legislative power. If a power is given, and the mode of its exercise is prescribed, all other modes are excluded.
Hutchinson, 50 NE at 601 (emphasis added).
[Â¶11] In 1982, the voters of this State transferred the duty of apportionment, if not performed by the Legislature, to this Court. The relevant part of Article III, Section 5, as amended, reads:


An apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991. Such apportionment shall be accomplished by December first of the year in which the apportionment is required. If any Legislature whose duty it is to make an apportionment shall fail to make the same as herein provided, it shall be the duty of the Supreme Court within ninety days to make such apportionment.
(emphasis added). This amendment is "the latest expression of the will of the people with respect to matters embraced therein and prevails over all preexisting inconsistent constitutional provisions." State v. Sathre, 113 NW2d 679, 683 (ND 1962); 16 AmJur2d Constitutional Law Â§ 81 (1998). The plain language of this amendment by the people supports an interpretation that the Legislature may only act to apportion after a decennial census and at no other time.
[Â¶12] "[A]ny Legislature whose duty it is to make an apportionment" will only be those legislatures meeting in 1983, 1991, and every ten years thereafter. The constitution provides for no other time for apportionment. The 1982 amendment requires this Court to apportion the Legislature should the Legislature fail to perform its duty. (fn2)  The Court's duty is also mandated to be performed at a time certain. It may only be performed within ninety days after December first of 1991 and every ten years thereafter if the Legislature fails to apportion its membership by the December first deadline. If the Legislature were free to apportion at any time, why transfer this duty to the Court to be performed within a specific period of time in the event the Legislature fails to act?
[Â¶13] The State argues the 1996 amendment is not an apportionment, but merely changes one voting district from two single-member districts into a dual-member district. Apportionment is defined as the "process by which legislative seats are distributed among units entitled to representation." Black's Law Dictionary at 99 (6thed 1990). There is no question the 1996 amendment to SDCL 2-2-28 effects an apportionment. The amended statute abolished distribution of a legislative seat in Districts No. 28A and 28B, and distributed two seats to District No. 28.
[Â¶14] Further, the State claims the 1982 amendment to the Constitution, deleting the words "at no other time" from Article III, Section 5 permits redistricting at times other than following a decennial census. This argument has already been addressed above. "We think no valid distinction can be based upon the point that in our Constitution the prohibition against action at any other time is express rather than implied." Opinion, 61 SD at 111, 246 NW2d at 296. The affirmative constitutional mandate for legislative action at a specified time remains in the present version of Article III, Section 5, thereby providing an implied prohibition of action at any other time. Kane, 371 NW2d at 174.
[Â¶15] Moreover, this argument disregards the language added by the voters in 1982, transferring the duty to apportion to this Court to perform within ninety days after the Legislature's deadline for performance has expired. We are not at liberty to ignore any part of the provision. "'A Constitutional provision, like a statute, must be read giving full effect to all of its parts.' The court, in construing a constitutional provision, must have regard to the whole instrument, and must seek to harmonize the various provisions, and if possible, give effect to all of them." Assoc. Gen. Contractors v. Schreiner, 492 NW2d 916, 922-23 (SD 1992) (citations omitted). The provision is self-executing and, once the duty to apportion has transferred to this Court, prohibits the Legislature from taking further action until after the next federal census.
[Â¶16] Finally, the State claims the South Dakota Legislature enacted the 1996 amendment in response to the United States Supreme Court decision in Miller v. Johnson, 515 US 900, 115 SCt 2475, 132 LEd2d 762 (1995) to "correct" what it perceived to be an unconstitutional act it enacted in 1991. Miller addressed a redistricting plan in Georgia involving congressional seats which was held to be violative of the Fourteenth Amendment's equal protection clause because it was drawn on the basis of race without sufficient showing that it was narrowly tailored to achieve a compelling state interest, thus satisfying strict scrutiny.
[Â¶17] Miller and its progeny must be read in conjunction with South Dakota's compliance with the Voting Rights Act of 1965, 42 USC Â§ 1973, as amended. See Sanchez v. State of Colorado, 97 F3d 1303, 1327 (10thCir 1996) ("Miller left open the question of whether compliance with the VRA, 'standing alone, can provide a compelling interest independent of any interest in remedying past discrimination.'" (quoting Miller, 515 US at 921, 115 SCt at 2490-91, 132 LEd2d at 783)). (fn3)  This argument by State begs the federal question left pending before the United States District Court and we are without jurisdiction to address this issue. The specific state law question certified to this Court has been answered.

CONCLUSION

[Â¶18] Constitutional provisions are not grants of power to the Legislature, but are instead limitations on legislative authority. Poppen, 520 NW2d at 241 (citing Wyatt v. Kundert, 375 NW2d 186, 191 (SD 1985)). Here, the Legislature acted beyond its constitutional limits. The certified question is answered in the affirmative. The South Dakota Legislature violated Article III, Section 5 of the South Dakota Constitution when it amended SDCL 2-2-28 in 1996. As this amended form is declared unconstitutional, the 1991 version of SDCL 2-2-28 remains in full force and effect. In re Certification of Questions of Law, 1996 SD 10, Â¶87, 544 NW2d 183, 204; Weegar v. Bakeberg, 527 NW2d 676, 678 (SD 1995).
[Â¶19] MILLER, Chief Justice, and KONENKAMP, Justice, concur.
[Â¶20] SABERS and GILBERTSON, Justices, dissent.
[Â¶21] SABERS, Justice (dissenting).
[Â¶22] I disagree with the majority opinion's conclusion that the South Dakota Legislature exceeded its constitutional authority in enacting SDCL 2-2-28. Because the 1991 version of SDCL 2-2-28 violated the Equal Protection Clause within the Fourteenth Amendment (amend. XIV, Â§ 1) and the corresponding provision of the South Dakota Constitution (art. VI, Â§ 2), the 1996 amendment was corrective and, therefore, constitutional.
[Â¶23] The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." The purpose is to promote "racial neutrality in governmental decisionmaking." Miller v. Johnson, 515 US 900, 904, 115 SCt 2475, 2482, 132 LEd2d 762, 771 (1995) (citations omitted). Thus, any legislation which makes distinctions on the basis of race or ethnicity is inherently suspect and, thus, subject to a strict scrutiny analysis. Id. (citations omitted). This includes redistricting legislation. See Shaw v. Reno, 509 US 630, 644, 113 SCt 2816, 2825, 125 LEd2d 511, 526-27 (1993) (providing that "redistricting legislation that is so bizarre on its face that it is 'unexplainable on grounds other than race,' ... demands the same close scrutiny that we give other state laws that classify citizens by race." (quotation omitted)).
[Â¶24] In 1991, the South Dakota Legislature enacted SDCL 2-2-28:


Each representative district as provided for in Â§ 2-2-26 is entitled to two representatives. However, in order to protect minority voting rights, District No. 28 shall consist of two single-member house districts as follows:

(1) District No. 28A--Dewey and Ziebach counties and that portion of Corson county consisting of Bullhead, Kenel, Liberty, Little Oak, Little Eagle, McLaughlin, Ridgeland and Wakpala precincts.
(2) District No. 28B--Harding and Perkins counties and that portion of Corson county consisting of Delaney, Grand Valley, Lincoln, McIntosh, Morristown and Wautauga precincts, and the cities of McIntosh, McLaughlin and Morristown and that portion of Butte county west of US Highway 85, north of US Highway 212 and east of SD Highway 79, excluding the cities of Belle Fourche and Nisland.
(emphasis added). In application, District 28A was carved out to include the Cheyenne River Sioux Reservation and portion of the Standing Rock Reservation, thereby creating a majority Native American Indian district. The plain statutory language unequivocally provides that the purpose of the re-districting was to "protect minority voting rights." This results in racial gerrymandering--plain and simple--and, therefore, violates the Fourteenth Amendment. The President of the Senate in 1991 corroborated this purpose:


[District 28A] was configured as a single-member district primarily on the basis of race. In other words, [it] was configured as a single-member district to gather within it as many persons as possible who were [Native American] Indian so as to maximize their chance of electing a [Native American] Indian to the legislature.
Race was the predominant factor in drawing two single-member districts in District 28 in 1991 and the other traditional districting principles were subordinated to racial objectives. Additionally, the minutes from the Redistricting Preparation Committee continually discuss a desire to maximize the "likelihood ... for the Lakota to elect legislative representatives." Obviously, race was the predominant, overriding factor explaining the legislature's redistricting of District 28.
[Â¶25] In 1993 and 1995, the United States Supreme Court held that redistricting legislation, even if it is neutral on its face, is unconstitutional if the effect is to separate citizens "into different voting districts on the basis of race." Miller, 515 US at 911, 115 SCt at 2486, 132 LEd2d at 776. See also Shaw, 509 US at 657, 113 SCt at 2832, 125 LEd2d at 535 (stating that "race-based districting by our state legislatures demands close judicial scrutiny."). In its analysis, the Court determined that districting on the basis of race "assumes from a group of voters' race that they 'think alike, share the same political interests, and will prefer the same candidates at the polls,' it engages in racial stereotyping at odds with equal protection mandates." Miller, 515 US at 920, 115 SCt at 2490, 132 LEd2d at 782 (quoting Shaw, 509 US at 647, 113 SCt at 2826, 125 LEd2d at 529) (citing Powers v. Ohio, 499 US 400, 410, 111 SCt 1364, 1370, 113 LEd2d 411, 424 (1991) (stating "We may not accept as a defense to racial discrimination the very stereotype the law condemns.")). (fn4)  The Court also clarified that its holding in Shaw extended to prohibit racial gerrymandering regardless of how compact or contiguous the new district was:


Our circumspect approach and narrow holding in Shaw did not erect an artificial rule barring accepted equal protection analysis in other redistricting cases. Shape is relevant not because bizarreness is a necessary element of the constitutional wrong or a threshold requirement of proof, but because it may be persuasive circumstantial evidence that race for its own sake, and not other districting principles, was the legislature's dominant and controlling rationale in drawing its district lines.
Id. at 913, 115 SCt at 2486, 132 LEd2d at 777.
[Â¶26] After the Miller decision was issued, Senator Lee Schoenbeck testified that he believed "that the creation of Districts 28A and 28B by the 1991 South Dakota Legislature violated the Equal Protection Clause of the ... Fourteenth Amendment." To remedy this constitutional violation, he introduced legislation, in 1996, to amend SDCL 2-2-28 by returning District 28 to a multi-member district. The amendment passed and SDCL 2-2-28 currently provides: "Each representative district as provided for in Â§ 2-2-26 is entitled to two representatives."
[Â¶27] The plaintiffs argue that this amendment violates Article III, Section 5 of the South Dakota Constitution: "[a]n apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991." Regardless of whether the legislature was prohibited from reapportioning the district in 1996, it was required to abide by the federal constitution and when there is an unavoidable conflict between the application of state and federal constitutions, the clear language of the Supremacy Clause controls:


This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding.
US Const. art. VI, cl. 2. After evaluating and balancing the competing constitutional values at stake, one must logically conclude that the substantive provisions of the United States Constitution control over the procedural provision within the South Dakota Constitution.
[Â¶28] It is rudimentary black-letter law that a statute may not be enacted in derogation of the state or federal constitutions. See Kane v. Kundert, 371 NW2d 172, 175 (SD 1985) (stating that "[i]t is rudimentary that a statute must serve and cannot abrogate the Constitution."). When a legislative enactment does conflict with the federal Constitution, it "must be disregarded--treated as if [it was] never enacted--by all courts recognizing the Constitution as the paramount law of the land." Wolff v. New Orleans, 103 US 358, 365, 26 LEd 395, 398 (1880). After considering these rules, we must declare that the 1991 version of SDCL 2-2-28 was invalid because it conflicted with the Due Process Clause of the Fourteenth Amendment. Furthermore, the 1996 amendment is valid because the legislature has a continuing duty of reapportionment and that duty continues until it is performed within the ambits of the state and federal constitutions. See In re Opinion of the Judges, 246 NW 295, 297 (SD 1933).
[Â¶29] In summary:


(1) It is clear that the condition "at no other time" has been deleted.
(2) Even if the condition remained in effect, it would not prohibit a mere correction to a reapportionment plan in contrast to the creation of a new reapportionment.
(3) Even if the above condition remained in effect, it would not prevent a mere correction to an illegal provision in a reapportionment plan, as here.
(4) Therefore, the legislative enactment of SDCL 2-2-28 was not only constitutional, it would, in effect, be required by the Constitutions of the State of South Dakota and the United States.
GILBERTSON, Justice (dissenting).
[Â¶30] I agree that the 1996 amendment to SDCL 2-2-28 deals with apportionment. However, I disagree that it violates Article III, Â§ 5 of the South Dakota Constitution. While that provision makes it the duty of the legislature to apportion itself every ten years, as the article is currently enacted it does not restrict the legislature from exercising its right to apportion on other occasions. Not only is this supported by the express language of the Constitution, but also by the history of this provision and its predecessor. Therefore I respectfully dissent.
[Â¶31] In ascertaining the intent of the adopters of the current constitutional text we look first to its predecessor. SD Automobile Club v. Volk, 305 NW2d 693, 697 (SD 1981). The original version of Article III, Â§ 5 enacted in 1889 stated as follows:


The legislature shall provide by law for the enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at its first regular session, after each enumeration and also after each enumeration made by authority of the United States, but at no other time, the legislature shall apportion the senators and representatives according to the number of inhabitants, excluding Indians not taxed and soldiers and officers of the United States army and navy. Provided, that the legislature may make an apportionment at its first session after the admission of South Dakota as a state. (emphasis added).
This article traces its roots back to the Constitutional Convention of 1883 where a similar provision passed without recorded debate. See Journal of the Constitutional Convention of 1883, South Dakota Historical Collections Vol 21, p 350, 358 (1942).
[Â¶32] However, when the same draft was presented to the 1885 Constitutional Convention, a vigorous debate ensued. One faction argued that the rapid growth of the proposed new State of South Dakota justified the legislative flexibility to authorize a more frequent apportionment. An amendment was offered to strike the words "but at no other time." (fn5)  South Dakota Constitutional Convention Debates of 1885, Vol 1 pp 207-09. This disputed language (fn6)  was crucial to this debate as it was recognized that the constitution was but a limit on the power of the legislature rather than a grant of power to it. Id. at 207. See also Territory v. Scott, 3 Dak 357, 20 NW 401, 404 (1884). Ultimately the forces in favor of the restrictive "at no other time" position were to prevail and Article III, Â§ 5 was so enacted in 1889. "First and foremost, the object of construing a constitution[al provision] is to give effect to the intent of the framers of the organic law and of the people adopting it." In re Janklow, 1999 SD 27, Â¶5, 589 NW2d 624, 626 (citing Schomer v. Scott, 65 SD 353, 274 NW 556, 559 (1937); State v. Jorgenson, 81 SD 447, 136 NW2d 870, 875 (1965)).
[Â¶33] This Court was called upon to interpret this provision in Opinion of the Judges, 61 SD 107, 246 NW 295 (1933). The issue before the Court was whether the 1933 legislature had the authority to apportion itself in light of the fact that the 1931 legislature had failed to act although required to do so by Article III, Â§ 5. We found that such authority existed.
[Â¶34] In dictum this Court cited cases from other jurisdictions that implied a restriction "at no other time" if one was not expressly drafted into the constitution. In so doing the Court failed to cite to our own constitutional debates as to the actual reason this express language was specifically used. It is very clear from these debates that if the legislature was to be precluded from authorizing an apportionment more often than every ten years, the limitation had to be an express one. No delegate in the Constitutional Convention of 1885 attempted to argue that the proposed text of this article contained an implied limitation on more frequent apportionments than were specifically enumerated. Further, the Court failed to consider the constitutional doctrine that was recognized by the Constitutional Convention of 1885 during this debate, that the constitution is but a limit on legislative authority and not a grant of authority to that body. See State Census, 62 NW at 130.
[Â¶35] In 1982 an amended version of Article III, Â§ 5 was proposed to the voters. It passed and is the current provision in effect. (7)  It states:


The Legislature shall apportion its membership by dividing the state into as many single-member, legislative districts as there are state senators. House districts shall be established wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine. Legislative districts shall consist of compact, contiguous territory and shall have population as nearly equal as is practicable, based on the last preceding federal census. An apportionment shall be made by the Legislature in 1983 and 1991 and every ten years after 1991. Such apportionment shall be accomplished by December first of the year in which the apportionment is required. If any Legislature whose duty it is to make an apportionment shall fail to make the same as herein provided, it shall be the duty of the Supreme Court within ninety days to make such apportionment.
Gone were the words "but at no other time." "Usually amendments are adopted for the express purpose of making a change in the existing system." Volk, 305 NW2d at 697.
[Â¶36] This Court presumes that the people adopted this amended constitutional provision in view of and with the understanding of the prior existing provision. Kneip v. Herseth, 87 SD 642, 214 NW2d 93, 102 (1974). An examination of the explanation of the ballot questions drafted by the South Dakota Secretary of State at the 1982 election sets out verbatim both the old text and the proposed text upon which the voters were to pass. (See attached copy). The deletion of the "but at no other time" language was obvious to the voters. "The courts are under the duty to consider the old law, the mischief, and the remedy, and to interpret the constitution broadly to accomplish the manifest purpose of the amendment." Volk, 305 NW2d at 697 (citing 16 AmJur2d Constitutional Law Â§ 88 (1979) (footnotes omitted)). (fn8) 
[Â¶37] Thus it is clear that the advocates of legislative flexibility who lost their argument at the 1885 Constitutional Convention were ultimately vindicated by the voters in 1982. The express constitutional prohibition against the now challenged legislative apportionment that was to occur in 1996, was removed in 1982. As such, I would hold the 1996 amendment to SDCL 2-2-28 to be constitutional.
[Â¶38] For the above reasons I respectfully dissent.

EXHIBIT A

1982 BALLOT QUESTIONS
STATE OF SOUTH DAKOTA JULY 30, 1982 

(MISS) ALICE KUNDERT
SECRETARY OF STATE
PIERRE, SD 5750 

A

The following amendment to the Constitution is submitted to a vote of the people by initiative of the voters pursuant to the Constitution:
AN INITIATED PROPOSAL to repeal Section 5 of Article III of the South Dakota Constitution and adopt a new Section 5, Article III, relating to apportionment and the establishment of single member senate districts.
This proposed Constitutional Amendment would:
(1) repeal existing Â§ 5 of Article III of the Constitution which requires the Legislature to apportion its membership every ten years according to the federal census, and at no other time, commencing in 1951, and in the event the Legislature fails to so apportion, mandates the Governor, superintendent of public instruction, presiding judge of the Supreme Court, attorney general and secretary of state to apportion within thirty days after the Legislature adjourns and requires the Governor to proclaim such apportionment; and
(2) place in the Constitution a new section requiring the Legislature to apportion its membership by dividing the state into single member senate districts and by establishing either single member or dual member house districts each wholly within a senate district. Each district shall consist of compact, contiguous territory containing, as nearly as practicable, equal population. Apportionment would be required in 1983, 1991, and each ten years thereafter. Upon failure of the Legislature to so apportion, the Supreme Court would do so within ninety days.
A vote "Yes" by a majority will change the Constitution as explained above.
A vote "No" by a majority will leave the Constitution as it exists.
Shall the proposed change of the Constitution be approved?
Following is the full text of the petition filed in the office of the Secretary of State:
WE, THE UNDERSIGNED, duly qualified voters of the State of South Dakota, hereby petition that Section S of Article III of the South Dakota Constitution be repealed and a new Section 5, Article III be submitted to the electorate of the State of South Dakota for their approval or rejection.
The new Section 5, Article III shall be as follows:
The Legislature shall apportion its membership by dividing the state into as many single-member, legislative districts as there are state senators. House districts shall be established wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine. Legislative districts shall consist of compact, contiguous territory and shall have population as nearly equal as is practicable, based on the last preceding federal census. An apportionment shall be made by the Legislature in 1983 and in 1991, and every ten years after 1991. Such apportionment shall be accomplished by December first of the year in which the apportionment is required. If any Legislature whose duty it is to make an apportionment shall fail to make the same as herein provided, it shall be the duty of the Supreme Court within ninety days to make such apportionment. 
Footnotes 
1.  In its entirety, this provision read:


The legislature shall provide by law for the enumeration of the inhabitants of the state in the year one thousand eight hundred and ninety-five and every ten years thereafter; and at its first regular session, after each enumeration and also after each enumeration made by authority of the United States, but at no other time, the legislature shall apportion the senators and representatives according to the number of inhabitants, excluding Indians not taxed and soldiers and officers of the United States army and navy. Provided, that the legislature may make an apportionment at its first session after the admission of South Dakota as a state. 
2.  As this Court observed in Opinion, 61 SD at 113, 246 NW at 297, "'[t]he failure to perform the duty cannot cancel the legislative obligation.'" (quoting Botti v. McGovern, 118 A 107, 108 (NJ 1922)). Observing the doctrine of separation of powers, this Court cannot compel the Legislature to perform its constitutional duties. In re State Census, 6 SD 540, 542, 62 NW 129, 130 (1895) (interpreting SDConst. Art. III, Â§ 5). The voters merely transferred this obligation to the Court to perform should the Legislature fail to do so. 
3.  In a separate concurrence in Bush v. Vera, 517 US 952, 990, 116 SCt 1941, 1968, 135 LEd2d 248, 278 (1996), Justice O'Connor announced that "compliance with the results test of Â§ 2 of the Voting Rights Act (VRA) is a compelling state interest." 
4.  Plaintiffs argue:


This Court can take judicial notice of the facts that Native Americans in South Dakota have a common and distinct history, a special quasi-sovereign tribal status, and a unique political status under the treaties, laws, and executive orders of the United States and under the laws of South Dakota. It is clear that placing tribal members from the Cheyenne River Sioux Reservation and the Standing Rock Sioux Reservation in the same district is not to indulge in racial stereotyping but simply to recognize communities that have a 'common thread of relevant interests.' (quoting Miller, 515 US at 920, 115 SCt at 2490, 132 LEd2d at 782).
I disagree that we can take judicial notice that all Native American Indians within District 28A have the same perspective as the plaintiffs do in this case. To comply with plaintiff's request is the equivalent of engaging in racial stereotyping because we would be assuming that the affected Native Americans "'think alike, share the same political interests, and will prefer the same candidates at the polls[.]'" Miller, 515 US at 920, 115 SCt at 2490, 132 LEd2d at 782 (quotation omitted). In short, plaintiffs request that we impose "the very racial stereotyping the Fourteenth Amendment forbids." Id. at 928, 115 SCt at 2494, 132 LEd2d at 787. 
5.  Advocates of allowing legislative discretion in this matter argued that the rapid growth of the new state may require apportionment after every legislative session. Opponents countered that this would create "danger" that such a decision may rest on "the interest of the political party dominant[.]" South Dakota Constitutional Convention Debates of 1885, Vol 1 p 207. Participating in this debate were many of the existing and future leaders of the judiciary. Delegate Dighton Corson who in 1889 was to become the first Presiding Judge of the South Dakota Supreme Court, opposed the deletion of the words "but at no other time" for the following reason:


We have a census taken every ten years by United States officials. It is provided here that in the year 1895 a census shall also be taken. There are two provided for in ten years, and certainly that is enough, and I do not think it wise to subject the state to any unnecessary expense, and I am opposed to striking out any portion of it. Id. 205-206.
Also participating in the debate were Alphonso Kellam who also became a Judge of the South Dakota Supreme Court in 1889 and Judge Wilmot Brookings who had previously served on the Dakota Territorial Supreme Court. The Chair of the debate was the Honorable A. J. Edgerton who at that time was the Chief Justice of the Dakota Territorial Supreme Court. See generally 1999-2000 South Dakota Legislative Manual, pp 490-91. 
6.  A dispute also arose over the words "shall" or "may" in regards to the duty of the legislature to conduct the census at the stated time. The "shall" faction successfully carried its position. However, this Court subsequently in In re State Census, 6 SD 540, 62 NW 129 (1895) held that when the 1895 legislature refused to conduct the census on the claim that it was not needed and was a waste of money, even though required by the Constitution, the legislature could not be forced by this Court to do so and the existing apportionment law would remain in effect until it did act. 
7.  Chapter 1 of the 1982 Session Laws indicates that this amendment was proposed by direct initiative of the voters rather than by the legislature. Thus, unlike the 1889 provision of this article, there exists no secondary material to be of assistance in interpreting the intent of the "framers ... and the people adopting it." Janklow, 1999 SD 27, Â¶5, 589 NW2d at 626. 
8.  The Court today reasons that under the current version of Article III, Â§ 5, "if the Legislature were free to apportion at any time, why transfer this duty to the Court to be performed within a specific period of time in the event the Legislature fails to act?" The answer is that under cases such as Baker v. Carr, 369 US 186, 82 SCt 691, 7 LEd2d 663 (1962) it was held that malapportioned state legislatures constitute a violation of the Fourteenth Amendment Equal Protection Clause and as such must be promptly corrected when found to exist. The 1982 amendment to Article III, Â§ 5 of the South Dakota Constitution recognized this requirement and if it were not timely done by the Legislature every ten years following the US Census, it would be done by the South Dakota Supreme Court to avoid violation of the United States Constitution. Given the fact that the Legislature in 1895 and 1931, despite the express mandate of Article III, Â§ 5, had refused to perform the required apportionment, the 1982 authorization for apportionment by the South Dakota Supreme Court in the face of legislative inaction cured any future threat of this prior problem and a Baker v. Carr violation. This is an entirely separate matter from the question now before us as to whether the legislature has the authority to exercise its prerogative to conduct an apportionment more often than the minimum that is expressly mandated by Article III, Â§ 5.