GILBERTSON, Chief Justice
(concurring).
[¶ 21.] I join in the Court’s opinion but wish to add a few points. Before us is the question of the standing of certain school districts within South Dakota to commence a declaratory judgment action against the State. A substantial portion of oral argument before this Court focused directly upon the relief the school districts were seeking in that underlying proceeding.
[¶ 22.] During oral arguments, the school districts stated, “[w]e are seeking declaratory relief. We are not seeking any kind of a specific amount of appropriation from the State.” Further, “[t]he school funding litigation does not ask for a dollar, and it asks for no relief other than declaratory relief, and attempts to enforce declaratory relief if certain statutes have to be enjoined as unconstitutional.”
[¶ 23.] When the Court asked if the school districts, “... would concede ... that there is no Constitutional authority for this Court to declare itself to be some kind of ‘super school board,’ that is now somehow, de facto, running the education system of South Dakota,” they replied, “[we] would readily concede that. We have made no assertion of that whatsoever.” The Court then asked, “What happens ... if we get to the point where the Legislature says ‘so what’ [in response to a declaratory judgment]? Do school districts have standing at that point ... to ask for an order to the Legislature to appropriate the funds?” The plaintiffs responded, “This Court can’t appropriate funds. That would violate separation of powers.... [The school districts do not have standing] to ask for the Court to appropriate funds.... ”
[¶ 24.] Finally, the school districts explained the underlying litigation as,
[A]n action brought purely under the Declaratory Judgment Act. The [DJA] specifically authorizes public corporations of any character whatsoever to bring declaratory judgment actions, including against the State. This Court placed one limitation on that, in the Dan Nelson case ... ‘The holding of Pennington County is limited to county suits seeking monetary relief from the State Treasury.’ So a governmental entity, a subdivision of government, could not sue the State for money to try to ... force it to appropriate funds. Although the underlying action involves funding issues, it does not ask for a dollar. It does not seek to disgorge any money from the public treasury.
[¶25.] From the foregoing, it is clear that the school districts seek only a declaration as to the meaning of article VIII of the South Dakota Constitution. Also, they have made it clear that this Court is not being asked to address the issue of the parameters of its authority to mandate any certain dollar amount of school funding. See generally McIntyre v. Wick, 558 N.W.2d 347 (S.D.1996).
[¶ 26.] To arrive at its result of limited standing by the school districts, the Court properly applies the public trust theory to resolve this issue. In its interpretation of article VIII of the South Dakota Constitution, the Court’s historical analysis begins with the Constitutional Convention of 1885, *325 which “framed the issues for debate in the 1889 Constitutional Convention and the constitution produced in 1885 was the genesis of the constitution adopted in 1889.” Chief Justice David Gilbertson & David S. Barari, Indexing the South Dakota Constitutional Conventions: A 21st Century Solution to a 125 Year Old, Problem, 58 SD Law Rev 260, 261 (2008) (citing In re Opinion of the Judges, 61 S.D. 107, 246 N.W. 295, 295 (1933); Schomer v. Scott, 65 S.D. 353, 274 N.W. 556, 562-63 (1937); Green v. Siegel, Barnett & Schutz, 1996 SD 146, ¶ 17 n. 8, 557 N.W.2d 396, 401 n. 8). Our case law since 1889, as cited by the Court, strongly supports standing in this limited case. It is clear from the Court’s analysis that this trust theory is limited to article VIII and no case law since 1889 suggests it applies to any subdivisions of government other than the schools.
[¶ 27.] I cannot join in the concept of standing through what is declared to be “a public interest exception.” Until today, such a doctrine has been unknown to our South Dakota Constitution or its interpretative scholarship. Moreover, it is a nebulous term without specific definition. We are not provided with a workable definition of what this term means; instead, we are told in general terms what it is not. Thus, should this exception be adopted, in future cases, what constitutes an issue of “great public importance” will be what three members of this Court conclude it to be. “The Court’s inability to formulate a ‘judicially discernible standard’ strongly counsels against the recognition of a novel constitutional right.” Caperton v. A.T. Massey Coal Co., Inc., — U.S. -, 129 S.Ct. 2252, 2272, 173 L.Ed.2d 1208 (2009) (Roberts, C.J.dissenting) (citing Vieth v. Jubelirer, 541 U.S. 267, 306, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (plurality opinion)). In future litigation, such a nebulous term invites the once narrow exception to swallow the general rule of no standing.